# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ERICKSON INCORPORATED,** *et al.* | § | **Case No. 16-34393-hdh** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION OF ERICKSON INCORPORATED, *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

Kenric D. Kattner
State Bar No. 11108400
Kourtney Lyda
State Bar No. 24013330
**HAYNES AND BOONE, LLP**
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.547.2000
Facsimile: 713.547.2600
Email: kenric.kattner@haynesboone.com
Email: kourtney.lyda@haynesboone.com

Ian T. Peck
State Bar No. 24013306
David L. Staab
State Bar No. 24093194
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**ATTORNEYS FOR DEBTORS**

Dated: February 3, 2017

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW ............... 1
    A.    Defined Terms. ................................................................................................. 1
    B.    Rules of Interpretation and Construction of Terms. ....................................... 1
    C.    Computation of Time. ....................................................................................... 1
    D.    Governing Law. ................................................................................................. 2
    E.    Reference to Monetary Figures. ........................................................................ 2
    F.    Reference to the Debtors or the Reorganized Debtors. ..................................... 2

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ................................. 2
    A.    Administrative Claims. ..................................................................................... 2
    B.    DIP Revolving Facility Claims. ........................................................................ 3
    C.    DIP Term Facility Claims. ................................................................................ 3
    D.    Professional Compensation Claims. .................................................................. 3
    E.    Priority Unsecured Tax Claims. ........................................................................ 4

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....... 4
    A.    Classification in General. .................................................................................. 4
    B.    Grouping of Debtors for Convenience Only. .................................................... 5
    C.    Summary of Classification of Claims and Interests. ......................................... 5
    D.    Treatment of Claims and Interests. ................................................................... 5
    E.    Special Provision Governing Unimpaired Claims. ........................................... 9
    F.    Elimination of Vacant Classes. ......................................................................... 9
    G.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ...................... 9
    H.    Intercompany Interests. ..................................................................................... 9
    I.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ............. 10
    J.    Controversy Concerning Impairment. ............................................................ 10
    K.    Subordinated Claims. ...................................................................................... 10
    L.    No Waiver. ....................................................................................................... 10

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 10
    A.    Corporate Existence. ....................................................................................... 10
    B.    Reorganized Debtors. ...................................................................................... 11
    C.    Restructuring Transactions. ............................................................................ 11
    D.    Sources of Plan Distributions. ......................................................................... 11
    E.    Vesting of Assets in the Reorganized Debtors. .............................................. 13
    F.    Cancellation of Existing Securities and Agreements. ..................................... 14
    G.    Corporate Action. ............................................................................................ 15
    H.    New Organizational Documents. ..................................................................... 15
    I.    Directors and Officers of the Reorganized Debtors. ...................................... 16
    J.    Effectuating Documents; Further Transactions. ............................................. 16
    K.    Section 1146 Exemption. ................................................................................ 16
    L.    Director and Officer Liability Insurance. ....................................................... 17
    M.    Management Incentive Plan. ............................................................................ 17
    N.    Employee and Retiree Benefits. ...................................................................... 17

O.    Retained Causes of Action. ........................................................................... 17
P.    Litigation Trust. ............................................................................................. 18
Q.    Miscellaneous ................................................................................................. 20

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
    ...................................................................................................................... 20
A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. .. 20
B.    Indemnification Obligations. ......................................................................... 21
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. .... 22
D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. . 22
E.    Preexisting Obligations to the Debtors under Executory Contracts and
    Unexpired Leases. .......................................................................................... 23
F.    Insurance Policies. ......................................................................................... 23
G.    Modifications, Amendments, Supplements, Restatements, or Other
    Agreements. ................................................................................................... 23
H.    Reservation of Rights. .................................................................................... 23
I.    Nonoccurrence of Effective Date. .................................................................. 24
J.    Contracts and Leases Entered Into After the Petition Date. ........................... 24

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................. 24
A.    Timing and Calculation of Amounts to Be Distributed. ................................. 24
B.    Disbursing Agent. .......................................................................................... 24
C.    Rights and Powers of Disbursing Agent. ........................................................ 25
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. .... 25
E.    Manner of Payment. ....................................................................................... 26
F.    Distributions to Holders of Class 6 General Unsecured Claims. .................... 27
G.    Section 1145 Exemption ................................................................................ 27
H.    Compliance with Tax Requirements. .............................................................. 27
I.    Allocations. ................................................................................................... 28
J.    No Postpetition Interest on Claims. ................................................................ 28
K.    Foreign Currency Exchange Rate. .................................................................. 28
L.    Setoffs and Recoupment. ............................................................................... 28
M.    Claims Paid or Payable by Third Parties. ....................................................... 29

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
    DISPUTED CLAIMS ...................................................................................... 30
A.    Claims Administration Responsibilities. ........................................................ 30
B.    Estimation of Claims and Interests. ............................................................... 30
C.    Adjustment to Claims or Interests without Objection. ..................................... 31
D.    Time to File Objections to Claims. ................................................................. 31
E.    Disallowance of Claims or Interests. .............................................................. 31
F.    Amendments to Claims or Interests. ............................................................... 31
G.    No Distributions Pending Allowance. ............................................................ 32
H.    Distributions After Allowance. ...................................................................... 32

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS
    ...................................................................................................................... 32

A.      Release of Debtors. .......................................................................................... 32
B.      Release of Liens. .............................................................................................. 33
C.      Releases by the Debtors. .................................................................................. 33
D.      Releases by Holders of Claims and Interests. ................................................. 34
E.      Exculpation. ..................................................................................................... 34
F.      Injunction. ........................................................................................................ 35
G.      Protections Against Discriminatory Treatment. .............................................. 35
H.      Reimbursement or Contribution. ..................................................................... 36

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
        OF THE PLAN ........................................................................................... 36
A.      Conditions Precedent to Confirmation. ........................................................... 36
B.      Conditions Precedent to Effectiveness. ........................................................... 36
C.      Waiver of Conditions. ...................................................................................... 37
D.      Effect of Failure of Conditions. ...................................................................... 37

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....... 37
A.      Modification and Amendments. ....................................................................... 37
B.      Effect of Confirmation on Modifications. ....................................................... 38
C.      Revocation or Withdrawal of Plan. ................................................................. 38

ARTICLE XI. RETENTION OF JURISDICTION ...................................................................... 38

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................... 41
A.      Immediate Binding Effect. ............................................................................... 41
B.      Additional Documents. ..................................................................................... 41
C.      Payment of Statutory Fees. .............................................................................. 41
D.      Statutory Committee and Cessation of Fee and Expense Payment. ................ 41
E.      Reservation of Rights. ...................................................................................... 41
F.      Successors and Assigns. ................................................................................... 42
G.      Notices. ............................................................................................................. 42
H.      Term of Injunctions or Stays. .......................................................................... 43
I.      Entire Agreement. ............................................................................................ 44
J.      Exhibits. ........................................................................................................... 44
K.      Nonseverability of Plan Provisions. ................................................................ 44
L.      Votes Solicited in Good Faith. ......................................................................... 44
M.      Closing of Chapter 11 Cases. ........................................................................... 45
N.      Waiver or Estoppel. .......................................................................................... 45
O.      Controlling Document. ..................................................................................... 45

## INTRODUCTION

The Debtors hereby propose this Chapter 11 Plan under Bankruptcy Code section 1121 for the resolution of outstanding Claims against, and Interests in, the Debtors. Holders of Claims or Interests may refer to the Disclosure Statement, filed contemporaneously with the Plan, for a summary and description of the Plan and certain related matters.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

A. *Defined Terms.*

All capitalized terms not defined elsewhere in the Plan shall have the meaning assigned to them in the Glossary of Defined Terms attached hereto as **Exhibit A**. Any capitalized term used in the Plan and not defined herein, but that is defined in the Bankruptcy Code, has the meaning assigned to that term in the Bankruptcy Code.  Any capitalized term used in the Plan and not defined herein or in the Bankruptcy Code, but that is defined in the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Rules.

B. *Rules of Interpretation and Construction of Terms.*

For purposes of the Plan: (1) any reference in the Plan to an existing document or exhibit Filed or to be Filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified; (2) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits of the Plan; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (4) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (5) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (6) unless otherwise specified, all references herein to exhibits are references to the exhibits in the Plan Supplement; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents Filed in the Chapter 11 Cases are references to docket numbers under the Bankruptcy Court's CM/ECF system; and (9) the rules of construction outlined in Bankruptcy Code section 102 and in the Bankruptcy Rules apply to the Plan.

C. *Computation of Time.*

In computing any period, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

1

D.      *Governing Law.*

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims, DIP Revolving Facility Claims, DIP Term Facility Claims and Priority Unsecured Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Investor Parties, each holder of an Allowed Administrative Claim (other than holders of Professional Compensation Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 10 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

Except for Professional Compensation Claims, DIP Revolving Facility Claims, DIP Term Facility Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party by the later of (1) 30 days after the Effective Date and (2) 30 days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After

notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court.

B.      *DIP Revolving Facility Claims.*

The DIP Revolving Facility Claims shall be Allowed in an amount equal to the amount of such DIP Revolving Facility Claims accrued or incurred as of the Effective Date, subject to the provisions of the DIP Financing Order and this Plan.  Except to the extent that a holder of an Allowed DIP Revolving Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Revolving Facility Claim, each such Allowed DIP Revolving Facility Claim shall be Paid in Full in Cash by the Debtors on the Effective Date, without setoff, deduction or counterclaim, in accordance with the terms of the Payoff Letter. Upon the indefeasible Payment in Full of the DIP Revolving Facility Claims in accordance with the terms of the Plan, on the Effective Date, all liens and security interests granted to secure such Allowed DIP Revolving Facility Claims shall be terminated and of no further force and effect.

C.      *DIP Term Facility Claims.*

The DIP Term Facility Claims shall be Allowed in the amount of such DIP Term Facility Claims accrued or incurred as of the Effective Date.  Except to the extent that a holder of an Allowed DIP Term Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Term Facility Claim, each holder of an Allowed DIP Term Facility Claim shall receive its Pro Rata share of (1) all or a portion of the New Second Lien Credit Facility, as set forth on Annex A to the Plan, and (2) the DIP Equity Distribution.  On the Effective Date, all liens and security interests granted to secure the obligations under the DIP Term Facility shall be terminated and of no further force and effect.  On the Effective Date, the DIP Term Facility Agent shall be authorized to (i) disburse all remaining funds (if any) in the DIP Term Facility Priority Account to the Debtors or the Reorganized Debtors and (ii) close the DIP Term Facility Priority Account.

D.      *Professional Compensation Claims.*

1.      *Final Fee Applications and Payment of Professional Compensation Claims.*

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Professional Compensation Claim Bar Date; provided, however, that Ordinary Course Professionals shall be compensated in accordance with the terms of the Ordinary Course Professionals Order. Objections to Professional Compensation Claims must be Filed and served

on the Reorganized Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. On the Effective Date, the Reorganized Debtors shall establish the Professional Compensation Claim Reserve for payment of Allowed Professional Compensation Claims and shall pay such Professional Compensation Claims in Cash in the amount the Bankruptcy Court allows from such reserve and from the Reorganized Debtors' Cash.

      2.     <u>Post-Confirmation Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Priority Unsecured Tax Claims.*

Except to the extent that a holder of an Allowed Priority Unsecured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Unsecured Tax Claim, each holder of such Allowed Priority Unsecured Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that the Reorganized Debtors, with the consent of the Required Investor Parties, shall have the right to pay any Allowed Priority Unsecured Tax Claim, or the remaining balance of any such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification in General.*

The Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

4

B.       *Grouping of Debtors for Convenience Only.*

The Plan groups the Debtors together solely for the purpose of describing treatment of Claims and Interests under the Plan and confirmation of the Plan. Although the Plan applies to all of the Debtors, the Plan constitutes seven (7) distinct Plans, one for each Debtor, and for voting and distribution purposes, each Class of Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable.  To the extent there are no Allowed Claims or Interest with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor.  Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim.  The grouping of the Debtors in this manner shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any Assets, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities.

C.       *Summary of Classification of Claims and Interests.*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Unsecured Claims | Impaired | Entitled to Vote |
| Class 2 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 3 | Secured Tax Claims | Impaired | Entitled to Vote |
| Class 4 | Existing First Lien Credit Facility Claims | Impaired | Entitled to Vote |
| Class 5 | Existing Second Lien Secured Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 8 | Erickson Incorporated Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

D.       *Treatment of Claims and Interests.*

    1.       <u>Class 1 – Other Priority Unsecured Claims</u>

        (a)       *Classification*: Class 1 consists of any Other Priority Unsecured Claims against any Debtor.

5

(b)    *Treatment*: At the option of the applicable Debtor, with the consent of the Required Investor Parties, each holder of an Allowed Other Priority Unsecured Claim shall receive, on or after the Effective Date, except to the extent that a holder of an Allowed Other Priority Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Unsecured Claim, the following:

(i)    Payment in full in Cash of its Allowed Class 1 Claim; or

(ii)    Such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9).

(c)    *Voting*: Class 1 is Impaired under the Plan. Holders of Allowed Claims in Class 1 are entitled to vote to accept or reject the Plan.

2.    Class 2 - Other Secured Claims

(a)    *Classification*: Class 2 consists of any Other Secured Claims against any Debtor.

(b)    *Treatment*: At the option of the applicable Debtor, with the consent of the Required Investor Parties, each holder of an Allowed Other Secured Claim shall receive, on or after the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Secured Claim, the following:

(i)    Payment in full in Cash of its Allowed Class 2 Claim;

(ii)    The collateral securing its Allowed Class 2 Claim; provided, however, any collateral remaining after satisfaction of such Allowed Class 2 Claim shall revest in the applicable Reorganized Debtor pursuant to the Plan; or

(iii)    Reinstatement of its Allowed Class 2 Claim.

(c)    *Voting*: Class 2 is Impaired under the Plan. Holders of Allowed Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.    Class 3 – Secured Tax Claims

(a)    *Classification*: Class 3 consists of any Secured Tax Claims against any Debtor.

(b)    *Treatment*: At the option of the applicable Debtor, with the consent of the Required Investor Parties, each holder of an Allowed Secured Tax Claim shall receive, on or after the Effective Date, except to the extent that a holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Secured Tax Claim, the following:

(i)      Payment in full in Cash of its Allowed Class 3 Claim;

(ii)     The collateral securing its Allowed Class 3 Claim; provided, however, any collateral remaining after satisfaction of such Allowed Class 3 Claim shall revest in the applicable Reorganized Debtor pursuant to the Plan; or

(iii)    Such other treatment consistent with the requirements of Bankruptcy Code section 1129(a)(9).

(c)      *Voting*: Class 3 is Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      Class 4 – Existing First Lien Credit Facility Claims

(a)      *Classification*: Class 4 consists of all Existing First Lien Credit Facility Claims.

(b)      *Allowance*:  The Existing First Lien Credit Facility Claims shall be Allowed in an amount equal to the amount of the Existing First Lien Credit Facility Claims accrued or incurred as of the Effective Date, without setoff, deduction or counterclaim, and subject to the provisions of the DIP Financing Order and this Plan.

(c)      *Treatment*: On the Effective Date, each holder of an Allowed Existing First Lien Credit Facility Claim shall receive, except to the extent that a holder of an Allowed Existing First Lien Credit Facility Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Existing First Lien Credit Facility Claim, Payment in Full, in Cash, of its Allowed Class 4 Claim; provided, however, there shall be no distribution for or on account of the Refinancing Accommodation Fee to the extent not payable pursuant to the Creditor Support Agreement. Upon the indefeasible Payment in Full of the Allowed Existing First Lien Credit Facility Claims in accordance with the terms of the Plan, on the Effective Date, all liens and security interests granted to secure such Allowed Existing First Lien Credit Facility Claims shall be terminated and of no further force and effect.

(d)      *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.      Class 5 – Existing Second Lien Secured Claims

(a)      *Classification*: Class 5 consists of all Existing Second Lien Secured Claims.

(b)      *Allowance*: To the extent Class 5 votes to accept the Plan, the Existing Second Lien Secured Claims shall be Allowed in the aggregate amount of the value of the Second Lien Equity Distribution based on the Plan Equity Value, which includes accrued but unpaid postpetition interest at the non-default contractual rate pursuant to the DIP Financing Order, and not subject to challenge, reduction, recharacterization, defense, offset, or counterclaims.

(c)    *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Existing Second Lien Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Existing Second Lien Secured Claim, each holder of an Allowed Class 5 Claim shall receive its Pro Rata share of the Second Lien Equity Distribution; *provided*, that if Class 5 votes to reject the Plan, the entire amount of Allowed Existing Second Lien Claims shall be deemed to be Allowed Existing Second Lien Deficiency Claims and treated as Claims in Class 6.

(d)    *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.    Class 6 - General Unsecured Claims

(a)    *Classification*:  Class 6 consists of all General Unsecured Claims against any Debtor.

(b)    *Allowance*: The Class 6 Existing Second Lien Deficiency Claims shall be Allowed in full and not subject to challenge, reduction, recharacterization, defense, offset, or counterclaims.

(c)    *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each General Unsecured Claim, each holder of an Allowed Class 6 Claim shall receive its Pro Rata share of the Litigation Trust Interests.

(d)    *Voting*: Class 6 is Impaired under the Plan. Holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.    Class 7 - Intercompany Claims

(a)    *Classification*:  Class 7 consists of all Intercompany Claims.

(b)    *Treatment*: On the Effective Date, Class 7 Claims shall be, at the option of the Debtors, with the consent of the Required Investor Parties, either Reinstated or cancelled and released without any distribution.

(c)    *Voting*: Class 7 is Unimpaired if the Class 7 Claims are Reinstated or Impaired if the Class 7 Claims are cancelled. Holders of Class 7 Claims are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code. Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

8.    Class 8 – Erickson Incorporated Interests

(a)    *Classification*: Class 8 consists of all Erickson Incorporated Interests.

(b)    *Treatment*: On the Effective Date, Class 8 Interests shall be cancelled and released without any distribution.

(c)  *Voting*: Class 8 is Impaired. Holders of Class 8 Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

9.  Class 9 – Intercompany Interests

(a)  *Classification*:  Class 9 consists of all Intercompany Interests.

(b)  *Treatment*: Intercompany Interests shall receive no distribution and shall be Reinstated for administrative purposes only at the election of the Reorganized Debtors.

(c)  *Voting*: Class 9 Claims are Unimpaired under the Plan. Holders of Class 9 Interests are deemed to accept the Plan.

E.  *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

F.  *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.  *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

Only holders of Allowed Claims in Classes 1, 2, 3, 4, 5, and 6 are entitled to vote to accept or reject the Plan. Holders of Claims in Classes 1, 2, 3, 4, 5, and 6 will receive Ballots containing detailed voting instructions.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

H.  *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.  Any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor.

I.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

If any Class of Claims entitled to vote on the Plan does not vote to accept the Plan, the Debtors may (i) seek confirmation of the Plan under Bankruptcy Code section 1129(b) or (ii) amend or modify the Plan in accordance with Article X of the Plan and the Bankruptcy Code.

J.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

L.      *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Claim or Interest.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

B.    *Reorganized Debtors.*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt its New Organizational Documents and the Management Incentive Plan. The Reorganized Debtors shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

C.    *Restructuring Transactions.*

On the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Rights Offering, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, and one or more transactions consisting of inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, which transactions shall be described in the Plan Supplement.   The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

D.    *Sources of Plan Distributions.*

Distributions under the Plan shall be made with: (1) Cash on hand, including Cash from operations; (2) the New Common Stock; (3) the New First Lien Credit Facility (4) the New Second Lien Credit Facility; (5) the Rights; (6) the proceeds from the Rights Offering; and (7) interests in the Litigation Trust, as applicable.

1.    <u>Issuance of New Common Stock</u>.

The issuance of the New Common Stock, including options, or other equity awards, if any, reserved for the Management Incentive Plan, by Reorganized Erickson is authorized without the need for any further corporate action or without any further action by the holders of Claims or Interests. On the Effective Date, the Debtors shall issue all securities, notes, instruments, certificates, and other documents required to be issued on the Effective Date pursuant to the Plan.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

    2.       New First Lien Credit Facility.

On the Effective Date, the Reorganized Debtors shall be authorized to enter into the New First Lien Credit Facility and execute the New First Lien Credit Facility Documents substantially in the form contained in the Plan Supplement, and any related agreements or filing without the need for any further corporate or organizational action and without further action by or approval of the Bankruptcy Court.

Confirmation shall be deemed approval of the New First Lien Credit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New First Lien Credit Facility, including any and all documents required to enter into the New First Lien Credit Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the New First Lien Credit Facility and that are in form and substance acceptable to the Required Investor Parties.

On the Effective Date, (a) upon the granting of Liens in accordance with the New First Lien Credit Facility, the agent thereunder shall have valid, binding and enforceable Liens on the collateral specified in the New First Lien Credit Facility Documents; and (b) upon the granting of guarantees, mortgages, pledges, Liens and other security interests in accordance with the New First Lien Credit Facility Documents, the guarantees, mortgages, pledges, Liens and other security interests granted to secure the obligations arising under the New First Lien Credit Facility shall be granted in good faith and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such Liens and security interests shall be as set forth in the New First Lien Credit Facility Documents.

    3.       New Second Lien Credit Facility.

On the Effective Date, the Reorganized Debtors shall be authorized to enter into the New Second Lien Credit Facility and execute the New Second Lien Credit Facility Documents substantially in the form contained in the Plan Supplement, and any related agreements or filing without the need for any further corporate or organizational action and without further action by or approval of the Bankruptcy Court.

Confirmation shall be deemed approval of the New Second Lien Credit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Second Lien Credit Facility, including any and all documents required to enter into the New Second Lien Credit Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the New Second Lien Credit Facility and that are in form and substance acceptable to the Required Investor Parties and the New Second Lien Agent.

On the Effective Date, (a) upon the granting of Liens in accordance with the New Second Lien Credit Facility, the agent thereunder shall have valid, binding and enforceable Liens on the collateral specified in the New Second Lien Credit Facility Documents; and (b) upon the granting of guarantees, mortgages, pledges, Liens and other security interests in accordance with the New Second Lien Credit Facility Documents, the guarantees, mortgages, pledges, Liens and other security interests granted to secure the obligations arising under the New Second Lien Credit Facility shall be granted in good faith and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such Liens and security interests shall be as set forth in the New Second Lien Credit Facility Documents.

4.    Rights Offering.

Following entry of the Approval Order, Reorganized Erickson shall consummate the Rights Offering, through which holders of Allowed Existing Second Lien Claims that are Eligible Offerees shall be offered Rights to acquire Rights Offering Common Stock and Rights Offering New Second Lien Loans in accordance with the Rights Offering Procedures and the Backstop Agreement. The Backstop Parties will backstop the Rights Offering in accordance with the terms and conditions of the Backstop Agreement.  The payment of the Put Option Premium payable in accordance with the Backstop Agreement, shall be approved by the Bankruptcy Court pursuant to the Approval Order.

E.    *Vesting of Assets in the Reorganized Debtors.*

Except with respect to the Litigation Trust Assets, the Liens granted under the New First Lien Credit Facility Documents, the New Second Lien Credit Facility Documents or any agreement, instrument, or other document incorporated in the Plan, or as otherwise provided in the Plan, on the Effective Date and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all property in each Estate, all Retained Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its

business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Failure to include a Cause of Action on the Schedule of Retained Causes of Action shall not constitute a waiver or release of such Cause of Action.

F.    *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan (including the Plan Supplement), all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding the foregoing, the DIP Term Facility Credit Agreement and Existing Second Lien Indenture shall continue in effect to the extent necessary to (i) allow the DIP Term Facility Agent and Indenture Trustee, as applicable in accordance with Article III of the Plan, to make distributions to the holders of DIP Term Facility Claims and Existing Second Lien Claims; (ii) permit the Indenture Trustee to assert its Charging Lien; (iii) allow the DIP Term Facility Agent and Indenture Trustee to maintain any right of indemnification, exculpation, contribution, subrogation or any other claim or entitlement it may have under the DIP Term Facility Credit Agreement or Existing Second Lien Indenture or both; (iv) permit the DIP Term Facility Agent and Indenture Trustee to appear before the Bankruptcy Court or any other court of competent jurisdiction after the Effective Date; (v) permit the DIP Term Facility Agent and Indenture Trustee to perform any functions that are necessary to effectuate the foregoing; and (vi) to exercise rights and obligations relating to the interests of the DIP Term Facility Parties or holders of Existing Second Lien Notes under the Existing Second Lien Indenture or both.

Notwithstanding the foregoing, the DIP Revolving Facility Credit Agreement and Existing First Lien Credit Agreement shall continue in effect to the extent necessary to (i) allow the DIP Revolving Facility Agent and Existing First Lien Agent, in accordance with Article III of the Plan, to make distributions to the holders of DIP Revolving Facility Claims and Existing First Lien Claims; (ii) allow the DIP Revolving Facility Agent and Existing First Lien Agent to maintain any right of indemnification, exculpation, contribution, subrogation or any other claim or entitlement it may have under the DIP Revolving Facility Credit Agreement (and "Loan Documents" as defined therein) or Existing First Lien Credit Documents or both; (iii) permit the DIP Revolving Facility Agent and Existing First Lien Agent to appear before the Bankruptcy Court or any other court of competent jurisdiction after the Effective Date; (iv) permit the DIP Revolving Facility Agent and Existing First Lien Agent to perform any functions that are necessary to effectuate the foregoing; and (v) to exercise rights and obligations relating to the DIP Revolving Facility Parties or interests of the Existing First Lien Lenders or both.

All Indenture Trustee Fees, whether incurred before or after the Effective Date, shall be submitted for payment, and shall be paid, in the manner set forth in, and in accordance with the

terms of, Section 12 of the DIP Financing Order; provided, however, that invoices for Indenture Trustee Fees incurred after the Effective Date need not be provided to the U.S. Trustee or counsel to any statutory committee appointed in the Chapter 11 Cases.

G.     *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the Employment Obligations, which adoptions or assumptions shall be acceptable to the Required Investor Parties; (2) selection of the directors and officers for the Reorganized Debtors as named in the Plan Supplement; (3) the distribution of the New Common Stock, including the Rights Offering Common Stock; (4) implementation of the Restructuring Transactions, including the Rights Offering and the payment of the Put Option Premium in accordance with the Backstop Agreement; (5) entry into the New First Lien Credit Facility Documents, and the New Second Lien Credit Facility Documents, as applicable; (6) adoption of the New Organizational Documents; (7) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (8) the establishment of the Litigation Trust; and (9) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors, as applicable; provided, that any such action shall be acceptable to the Required Investor Parties.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Common Stock, Rights Offering Common Stock, the New Organizational Documents, the New First Lien Credit Facility Documents, the New Second Lien Credit Facility Documents, interests in the Litigation Trust, and any and all other agreements, documents, securities, and instruments relating to the foregoing, each of which shall be in form and substance acceptable to the Required Investor Parties. The authorizations and approvals contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

H.     *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be adopted as may be necessary to effectuate the transactions contemplated by the Plan. Each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. The New Organizational Documents will prohibit the issuance of non-voting equity securities, to the extent required under Bankruptcy Code section 1123(a)(6). After

15

the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the terms thereof and applicable law. The New Organizational Documents shall be included in the Plan Supplement.

I.      *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the terms of the current members of the board of directors of the Debtors shall expire, and the initial boards of directors, including the New Board, and the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. The New Board shall initially consist of 5-7 members, each of which shall be designated by the Required Investor Parties. The members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing, and the Reorganized Debtors' chief executive officer may be a member of the New Board. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the members of the New Board and any Person proposed to serve as an officer of the Reorganized Debtors shall be disclosed at or before the Confirmation Hearing, in each case to the extent the identity of such proposed director or officer is known at such time. To the extent any such director or officer of the Reorganized Debtors is an Insider, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

J.      *Effectuating Documents; Further Transactions.*

Except as otherwise provided for in the Plan with respect to Secured Claims arising under the DIP Revolving Facility Credit Agreement, the DIP Term Facility Credit Agreement, the Existing First Lien Credit Agreement, and the Existing Second Lien Indenture, on and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

K.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the New First Lien Credit Facility or the New Second Lien Credit Facility, as applicable; or (6) the making, delivery, or recording of any deed

16

or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L.     *Director and Officer Liability Insurance.*

On or before the Effective Date, the Debtors shall purchase and maintain directors and officers liability insurance coverage for the three-year period following the Effective Date on terms no less favorable to the insureds than the Debtors' existing director and officer coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director and officer coverage upon placement.

M.     *Management Incentive Plan.*

After the Effective Date, the New Board shall adopt the Management Incentive Plan for the Reorganized Debtors, the terms of which shall, subject to approval by the New Board: (a) include options providing for an aggregate of up to 5% pro forma ownership of equity securities in Reorganized Erickson after issuance of all New Common Stock on or as of the Effective Date, including the Rights Offering Common Stock and the DIP Equity Distribution; and (b) otherwise contain terms and conditions generally consistent with those prevailing in the market that are in form and substance acceptable to the Required Investor Parties.

N.     *Employee and Retiree Benefits.*

Unless otherwise provided herein, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans. Notwithstanding the foregoing, pursuant to Bankruptcy Code section 1129(a)(13), from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

O.     *Retained Causes of Action.*

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, and excluding the Litigation Trust Causes of

Action, in accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtors shall retain and shall have the exclusive right, authority, and discretion to (without further order of the Bankruptcy Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtors or the Estates may hold against any Entity, whether arising before or after the Petition Date.  The Debtors reserve and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases.

Unless a Retained Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Bankruptcy Court, the Debtors expressly reserve such Retained Cause of Action (including any counterclaims) for later adjudication by the Reorganized Debtors.  Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral, estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action (including counterclaims) on or after the Confirmation of the Plan.

P.      *Litigation Trust.*

The Litigation Trust will be governed by the Litigation Trust Agreement, which will be filed as part of the Plan Supplement.  On the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, on its own behalf and on behalf of the Litigation Trust Beneficiaries shall execute the Litigation Trust Agreement and shall take all other steps necessary to establish the Litigation Trust in accordance with and pursuant to the terms of the Litigation Trust Agreement.

The Litigation Trust shall be established as a liquidating grantor trust for the purpose of liquidating and distributing the Litigation Trust Assets to the Litigation Trust Beneficiaries in accordance with this Plan and Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. All parties and Litigation Trust Beneficiaries shall treat the transfers in trust described herein as transfers to the Litigation Trust Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including, sections 61(a)(12), 483, 1001, 1012, and 1274).  All the parties and Litigation Trust Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Litigation Trust Assets, had been first transferred to the Litigation Trust Beneficiaries and then transferred by the Litigation Trust Beneficiaries.  The Litigation Trust Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Litigation Trust and the owners of the Litigation Trust.  The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) or (b).   All parties, including the Litigation Trust Beneficiaries and the Litigation Trustee shall value the Litigation Trust Assets consistently and such valuations shall be used for all federal income tax purposes.

The Debtors or the Reorganized Debtors shall transfer the Litigation Trust Assets to the Litigation Trust.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. Upon delivery of the Litigation Trust Assets to the Litigation Trust, the Reorganized Debtors shall be released from all liability with respect to the delivery of such distributions.

The Litigation Trust Agreement shall provide for the appointment of the Litigation Trustee.  The Litigation Trustee shall be selected by the Required Investor Parties, and the Debtors will disclose the identity of the initial Litigation Trustee in the Plan Supplement.  The retention of the Litigation Trustee shall be approved in the Confirmation Order. The Litigation Trust Agreement shall provide that the Litigation Trustee must obtain consent from the Reorganized Debtors, which shall not be unreasonably withheld, prior to pursuing each Preference Cause of Action against a particular defendant.

The Litigation Trustee shall have the power to administer the assets of the Litigation Trust in accordance with the Litigation Trust Agreement.  The Litigation Trustee shall be the estate representative designated to prosecute any and all Litigation Trust Causes of Action. Without limiting the generality of the foregoing, the Litigation Trustee shall (a) hold, administer and prosecute the assets of the Litigation Trust and any proceeds thereof; (b) have the power and authority to retain, as an expense of the Litigation Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Litigation Trustee under the Litigation Trust Agreement; (c) make distributions as provided in the Litigation Trust Agreement; and (d) provide periodic reports and updates regarding the status of the administration of the Litigation Trust.  The Litigation Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Litigation Trust Interests pursuant to the Litigation Trust Agreement.

On the Effective Date, the Reorganized Debtors will transfer the Litigation Trust Funding Amount to the Litigation Trust to fund its operations under the Plan.  Under no circumstances shall the Debtors or the Reorganized Debtors be required to contribute any of their respective assets to the Litigation Trust other than the Litigation Trust Funding Amount and the Litigation Trust Assets.

The Debtors or Reorganized Debtors, as applicable, shall provide the Litigation Trust with reasonable access to the books and records of the Debtors or Reorganized Debtors concerning the Litigation Trust Causes of Action.  In connection with the transfer of the Litigation Trust Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) to the extent related to the Litigation Trust Causes of Action shall be shared by the Litigation Trust and the Reorganized Debtors and shall vest in the Litigation Trustee and attorneys, agents, and representatives to the extent necessary to effect such shared privilege.  The Debtors or the Reorganized Debtors, as the case may be, and the Litigation Trustee are authorized to take all necessary actions to effectuate the sharing and vesting of such privileges. The Confirmation Order shall provide that the Litigation Trustee's receipt of the shared privileges shall be without waiver of any such privileges, in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' Estates.  The Litigation Trustee shall not waive any privilege with respect to any documents or communication covered under this Section without the prior written consent of the Reorganized Debtors.

The transfer of the Litigation Trust Funding Amount and the Litigation Trust Assets to the Litigation Trust shall be made, as provided herein, for the benefit of the Litigation Trust Beneficiaries.  Upon the transfer of the Litigation Trust Funding Amount and the Litigation Trust Assets, the Debtors or the Reorganized Debtors, as the case may be, shall have no interest in or

with respect to the Litigation Trust Funding Amount, the Litigation Trust Assets or the Litigation Trust. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtors and the Litigation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtors. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed to the Litigation Trust Beneficiaries consistent with the terms of the Plan and the Litigation Trust Agreement.

Q.     *Miscellaneous*

Notwithstanding anything to the contrary in the Plan, the Plan does not alter the rights and obligations of the United States and the Debtors and Reorganized Debtors pursuant to the Stipulation whether the United States votes to accept or reject the Plan, or does not vote on the Plan. Pursuant to the Stipulation, the United States is entitled to apply post-petition or post confirmation funds (up to the amounts released) owed to the Debtors or Reorganized Debtors against Allowed Claims of the United States.

Notwithstanding any provision of the Plan to the contrary, any Claim asserted by the United States or its agencies for penalties or punitive damages shall not automatically constitute a Subordinated Claim under the Plan; provided, however, that nothing herein shall constitute or be deemed a waiver of the Debtors' and any party-in-interest's rights to seek a determination that any such Claim constitutes a Subordinated Claim.

Nothing in the Plan or Confirmation Order shall discharge any Claims of the United States arising on or after the Confirmation Date. Nothing in the Plan or the Confirmation Order shall enjoin or otherwise impair the United States' rights, of setoff or recoupment, subject to any defenses, claims or objections the Debtors or any other parties-in-interest may have in respect thereof.

Notwithstanding anything to the contrary in the Plan, the United States shall not be deemed a Releasing Party under the Plan unless the United States votes to accept the Plan or votes to reject the Plan and does not opt out on the Ballot; provided, however, that the foregoing shall not (a) limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code; or (b) affect the releases provided by the Debtors and other parties under the Plan.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed assumed, in accordance with the provisions and requirements of sections

365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; (2) are specifically designated on the Schedule of Rejected Contracts and Leases Filed and served prior to commencement of the Confirmation Hearing; (3) are specifically designated on the Schedule of Rejected Aircraft Leases Filed and served prior to commencement of the Confirmation Hearing; (4) are subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (5) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (6) are the subject of Article IV.N of the Plan.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth in the Plan, the Schedule of Assumed Aircraft Leases, the Schedule of Assumed Contracts and Leases, the Schedule of Rejected Aircraft Leases or the Schedule of Rejected Contracts and Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Investor Parties, reserve the right to alter, amend, modify, or supplement the Schedules identified in Article V of the Plan and in the Plan Supplement at any time through and including 45 days after the Effective Date.

In the event that an Executory Contract with a Governmental Unit is subject to an assignment by the Debtors, such assignment shall require the consent of the United States to the extent required by applicable non-bankruptcy law.

B.     *Indemnification Obligations.*

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.  For the avoidance of doubt, any indemnification obligations to Former Directors and Officers of the Debtors shall be terminated on the Effective Date and be of no further force and effect.

C.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, (3) the Effective Date, or (4) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.D.6 hereof.

D.     *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Pursuant to the Approval Order, the Debtors shall provide for notices of proposed assumption and proposed cure amounts and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

22

E.     *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

F.     *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

G.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.     *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases or the Schedule of Rejected Aircraft Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

I.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

J.    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent or the Indenture Trustee, as applicable. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

Anything herein to the contrary notwithstanding, all distributions on account of Existing Second Lien Secured Claims in Class 5 and Existing Second Lien Deficiency Claims in Class 6, shall, unless the Indenture Trustee agrees otherwise, be made to the Indenture Trustee and shall be subject to the right of the Indenture Trustee to assert its Charging Lien.

C.    *Rights and Powers of Disbursing Agent.*

    1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

    2.    Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.    Record Date for Distribution.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, the DIP Term Facility Agent, or their respective agents, shall be closed, and the Debtors, the DIP Term Facility Agent, or their respective agents shall not be required to make any further changes in the record holders of any of the Claims or Interests. The Debtors, the DIP Term Facility Agent, or the Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent, the DIP Term Facility Agent, and Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable. For the avoidance of doubt, the Distribution Record Date shall not apply to publicly held securities.

    2.    Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further, however*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

    3.    Minimum Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on

account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded down to the nearest whole share and the principal amount of all Rights Offering New Second Lien Loans will be rounded down to the nearest whole dollar. The total number of authorized shares of New Common Stock to be distributed to holders of Allowed Claims and Allowed Interests (as applicable) shall be adjusted as necessary to account for the foregoing rounding. To the extent Cash is distributed under the Plan, no Cash payment of less than $50.00 shall be made to a holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by Reorganized Debtors.

4.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

E.      *Manner of Payment.*

1.      All distributions of the New Common Stock to the holders of Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Reorganized Debtors. The DIP Term Facility Agent shall not act as Disbursing Agent with respect to distributions of the DIP Equity Distribution to the DIP Term Facility Lenders and shall have no responsibility or liability for such distributions.

2.      All distributions of the New Second Lien Credit Facility to the holders of Allowed DIP Term Facility Claims under the Plan shall be made by the Disbursing Agent on behalf of the Reorganized Debtors.

3.      All distributions of the Rights, the Rights Offering Common Stock, and the Rights Offering New Second Lien Loans under the Plan, as well as the Put Option Premium to the Backstop Parties, shall be made by the Disbursing Agent on behalf of the Reorganized Debtors.

4.      All distributions of Cash to the holders of Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

5.      At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

     6.     All distributions pursuant to Article II.B and Article III.D.4 shall be made by the Disbursing Agent in accordance with the terms of the Payoff Letter(s).

F.     *Distributions to Holders of Class 6 General Unsecured Claims.*

     1.     On or before the date that is 180 days after the Effective Date, the Disbursing Agent shall distribute to each holder of an Allowed Class 6 General Unsecured Claim its Pro Rata share of the Litigation Trust Interests.

     2.     Distributions on account of Disputed Class 6 General Unsecured Claims shall be held in the Class 6 Disputed Claims Reserve until such Claims have been either Allowed or Disallowed. To the extent a Disputed Class 6 General Unsecured Claim becomes Allowed, the distribution reserved for such Claim shall be distributed to the holder thereof. To the extent a Disputed Class 6 General Unsecured Claim becomes Disallowed, the distribution reserved for such Claim shall be distributed Pro Rata to holders of Class 6 General Unsecured Claims.

     3.     For purposes of Article VI.F and Article III.D.6, "Pro Rata" means, as to a particular holder of a Claim in Class 6, the ratio that the amount of such Claim held by such Class 6 Claim holder bears to the aggregate amount of all Class 6 General Unsecured Claims, and such ratio shall be calculated as if all Disputed Class 6 General Unsecured Claims are Allowed Claims as of the Effective Date.

G.     *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock as contemplated by Article III.D of the Plan, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and subject to any restrictions in the Reorganized Debtors' New Organizational Documents.

The Rights and the Rights Offering Common Stock shall be exempt from registration under the Securities Act through a private placement pursuant to section 4(a)(2) of the Securities Act, and/or the safe harbor of Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements. None of the Rights distributed in the Rights Offering and the shares of Rights Offering Common Stock will be registered under the Securities Act, nor any state, local or foreign law requiring registration for offer or sale of a security and no such securities may be offered, resold or otherwise transferred except pursuant to an effective registration statement under the Securities Act or an available exemption from the registration requirements thereof.

H.     *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any

Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.      *Allocations.*

        Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

J.      *No Postpetition Interest on Claims.*

        Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

K.      *Foreign Currency Exchange Rate.*

        Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

L.      *Setoffs and Recoupment.*

        Except as expressly provided in the Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice

28

thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

M.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, with respect to all Interests and Claims other than General Unsecured Claims, shall have the authority to:  (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Interests or Claims other than General Unsecured Claims immediately prior to the Effective Date.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Litigation Trustee, with respect to General Unsecured Claims only, shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  After the Effective Date, the Litigation Trustee shall have and retain any and all rights and defenses the applicable Debtor had with respect to any General Unsecured Claim immediately prior to the Effective Date.

B.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, and the Litigation Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

30

C.      *Adjustment to Claims or Interests without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Time to File Objections to Claims.*

Except as otherwise specifically provided in the Plan, any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such claims.

E.      *Disallowance of Claims or Interests.*

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

F.      *Amendments to Claims or Interests.*

On or after the Effective Date, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Bankruptcy Court or the Reorganized Debtors to File or amend a Proof of Claim prior to May 8, 2017, which is the bar date applicable to Governmental Units pursuant to section 502(b)(9) of the Bankruptcy Code.

G.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII.D hereof, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Release of Debtors.*

**Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.**

B.      *Release of Liens.*

Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.D.2 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. On and after the Effective Date, any holder of such Secured Claim (and the applicable agents for such holder), at the expense of the Reorganized Debtors, shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

Without limiting the automatic release provisions of the immediately preceding paragraph: (i) except for distributions required under Article II.B and Article III.D.4, no other distribution hereunder shall be made to or on behalf of any Claim holder unless and until such holder executes and delivers to the Debtors or Reorganized Debtors such release of liens or otherwise turns over and releases such Cash, pledge or other possessory liens; and (ii) any such holder that fails to execute and deliver such release of liens within 180 days of the Effective Date shall be deemed to have no Claim against the Debtors or their assets or property in respect of such Claim and shall not participate in any distribution hereunder.

C.      *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of- court restructuring efforts, intercompany transactions, the Rights Offering, the Chapter 11 Cases, the Disclosure Statement, the DIP Term Facility, the DIP Revolving Facility, the

33

Plan (including the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Term Facility, the DIP Revolving Facility, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

D.      *Releases by Holders of Claims and Interests.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Rights Offering, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Term Facility, the DIP Revolving Facility, the Plan (including the Plan Supplement), or any Restructuring Transactions, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

E.      *Exculpation.*

The Exculpated Parties shall not have or incur any liability to any holder of a Claim or Interest, for any act, event, or omission from the Petition Date to the Effective Date in connection with or arising out of the Chapter 11 Cases, the confirmation of the Plan, the Consummation of the Plan, the administration of the Plan or the assets and property to be distributed pursuant to the Plan (including unclaimed property under the Plan), unless such Entity's action is determined as (i) bad faith; (ii) actual fraud; (iii) willful misconduct; or (iv) gross negligence, in each case by a Final Order of a court of competent jurisdiction. Each Entity may reasonably rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors.

F.      *Injunction.*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.**

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.    *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.    *Conditions Precedent to Confirmation.*

The following are conditions precedent to confirmation of the Plan that shall be satisfied or waived in writing in accordance with Article IX.C of the Plan:

1.    The Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan in form and substance acceptable to (i) the Debtors, (ii) the Required Investor Parties, and (iii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement; and

2.    The Confirmation Order, the Plan, and the Plan Documents shall be in form and substance acceptable to (i) the Debtors, (ii) the Required Investor Parties, and (iii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement.

B.    *Conditions Precedent to Effectiveness.*

The following are conditions precedent to the occurrence of the Effective Date, each of which shall be satisfied or waived in writing in accordance with Article IX.C of the Plan:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to (i) the Debtors, (ii) the Required Investor Parties, and (iii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement; and shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) without the consent of (i) the Required Investor Parties, and (ii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement, have been modified or amended.

2.    The Plan and the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to (i) the Required Investor Parties,

and (ii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement.

   3.   The New Organizational Documents shall have been in place, effective and filed where required.

   4.   The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

   5.   The Debtors shall have paid in full all accrued and unpaid reasonable and documented fees and expenses, both pre- and postpetition, through the Effective Date of (i) Akin Gump Strauss Hauer & Feld LLP and Houlihan Lokey Capital, Inc. as advisors to the Backstop Parties and the ad hoc group of holders of Existing Second Lien Notes, and (ii) the DIP Term Facility Agent and its counsel;

   6.   The Debtors shall have Paid in Full all accrued and unpaid reasonable and documented Lender Group Expenses (as defined in the DIP Revolving Facility Credit Agreement) in accordance with the terms of the Plan and the Payoff Letter; and

   7.   In accordance with the Plan and the DIP Financing Order, the Debtors shall have paid in full all accrued and unpaid reasonable and documented Indenture Trustee Fees.

C.   *Waiver of Conditions.*

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived only with the prior written consent of (i) the Debtors, (ii) the Required Investor Parties, (iii) the DIP Revolving Facility Agent and the Required Lenders as to Article IX.A.1, Article IX.A.2, Article IX.B.1, Article IX.B.2, and Article IX.B.6, and (iv) the DIP Term Facility Agent as to Article IX.B.5(ii), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.   *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.   *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right, with the consent of (i) Required Investor Parties and (ii) the DIP Revolving Facility Agent, the Required Lenders, or all DIP Revolving Facility Lenders, if applicable, to the extent required

under the DIP Revolving Facility Credit Agreement, to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights, with the consent of (i) Required Investor Parties and (ii) the DIP Revolving Facility Agent, the Required Lenders, or all DIP Revolving Facility Lenders, if applicable, to the extent required under the DIP Revolving Facility Credit Agreement, to revoke or withdraw, or, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, with the consent of (i) the Required Investor Parties, and (ii) the DIP Revolving Facility Agent, the Required Lenders, or all DIP Revolving Facility Lenders, if applicable, to the extent required under the DIP Revolving Facility Credit Agreement, to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

To the fullest extent permitted by applicable law, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and

enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.M hereof;

13.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     enter an order concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and released granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall (other than for purposes of filing final fee applications and obtaining Bankruptcy Court approval of same) dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

E.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the

Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

F.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.     *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.     <u>Counsel to Debtors</u>:

Haynes and Boone, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Attn: Kenric D. Kattner, Kourtney Lyda

And

Haynes and Boone, LLP
2323 Victory Ave, Suite 700
Dallas, Texas 75219
Attn: Ian Peck, David Staab

    2.     <u>Counsel to DIP Revolving Agent and Existing First Lien Agent</u>:

Goldberg Kohn, Ltd.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603-5792
Attn: Randall Klein

And

K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
Attn: David Weitman

    3.    <u>Counsel for the Backstop Parties and an ad hoc group of holders of Existing Second Lien Notes</u>:

> Akin Gump Strauss Hauer & Feld LLP
> 1700 Pacific Avenue, Suite 4100
> Dallas, Texas 75201
> Attn: Charles R. Gibbs
>
> Akin Gump Strauss Hauer & Feld LLP
> 1333 New Hampshire Avenue, N.W.
> Washington, DC 20036-1564
> Attn: Scott L. Alberino
>
> Akin Gump Strauss Hauer & Feld LLP
> One Bryant Park
> New York, NY 10036
> Attn: Brad M. Kahn

    4.    <u>Counsel to the DIP Term Facility Agent</u>

> Ropes & Gray LLP
> 1211 Avenue of the Americas
> New York, New York 10036
> Attn: Mark R. Somerstein, Patricia I. Chen

    5.    <u>Counsel to Wilmington Trust, National Association, as indenture trustee and notes collateral agent for the 8.25% Second Priority Senior Secured Promissory Notes Due 2020</u>:

> Seyfarth Shaw LLP
> 620 8th Avenue
> New York, NY 10018
> Attn: Edward M. Fox, Esq.

After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force

and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.     *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.     *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at www.kccllc.net/erickson. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.     *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

L.     *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

Dated:  February 3, 2017                    ERICKSON INCORPORATED

                                            on behalf of itself and all other Debtors


                                            By: _/s/  David Lancelot_
                                            David Lancelot
                                            Chief Restructuring Officer
                                            Erickson Incorporated

## EXHIBIT A

### GLOSSARY OF DEFINED TERMS

*Accredited Investor* means "accredited investor" within the meaning of Rule 501(a) of Regulation D under the Securities Act.

*Administrative Claim* means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 503(b), 507(a)(2), and 507(b), including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and/or in connection with operating the Debtors' businesses (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estates under 28 U.S.C. § 1930. The term Administrative Claim specifically excludes all Intercompany Claims.

*Administrative Claim Bar Date* means the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline established by an order of the Bankruptcy Court.

*Affiliate* has the meaning prescribed in Bankruptcy Code section 101(2).

*Allowed […] Claim* means an Allowed Claim in the particular Class or category specified.

*Allowed […] Interest* means an Allowed Interest in the particular Class or category specified.

*Allowed* means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502: (a) for which a Proof of Claim or proof of interest was timely Filed, and as to which no objection or other challenge to allowance thereof has been Filed, or if an objection or challenge has been timely Filed, such Claim or Interest is allowed by Final Order; (b) for which a Proof of Claim or proof of interest is not Filed and that has been listed in a Debtors' Schedules of Assets and Liabilities or Schedule of Equity Security Holders and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed under the Plan.  For purposes of determining the amount of an Allowed Claim or Allowed Interest, there shall be deducted therefrom the amount of any claim that the Debtors may hold against the Creditor or equity security holder under Bankruptcy Code section 553 or under the doctrine of recoupment.

*Allowed Claim* means any Claim that is Allowed.

*Approval Order* means Final Order or Final Orders approving the Disclosure Statement and Rights Offering Procedures.

1

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

***Backstop Agreement*** means the agreement to be entered into by the Debtors and the Backstop Parties, pursuant to which, among other things, (a) the Backstop Parties shall backstop the Rights Offering, and (b) the Backstop Parties shall receive the Put Option Premium.

***Backstop Parties*** means the Entities listed on Schedule I of the Backstop Agreement, together with their respective successors and permitted assignees.

***Ballot*** means the applicable form or forms of ballot(s) to be distributed to holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules prescribed by the Bankruptcy Court.

***Bar Date*** means March 20, 2017, the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

***Beneficial Holder Ballot*** means the Ballot applicable to a beneficial holder who holds Existing Second Lien Secured Claims.

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character

2

whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

*Chapter 11 Cases* means the bankruptcy cases commenced by the Debtors on November 8, 2016, by the filing of voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case Numbers 16-34392, 16-34393, 16-34394, 16-34395, 16-34396, 16-34397, and 16-34398, jointly administered under Case Number 16-34393.

*Charging Lien* means any Lien or other priority in payment arising before or after the Effective Date to which the Indenture Trustee is entitled, pursuant to the Existing Second Lien Indenture, against distributions to the Holders of Existing Second Lien Claims under the Existing Second Lien Indenture, for payment of any Indenture Trustee Fees, which Lien or other priority in payment shall be deemed a separate right of the Indenture Trustee arising under the Plan.

*Claim* means a "claim," as defined in Bankruptcy Code § 101(5), Filed against any of the Debtors.

*Claims and Balloting Agent* means Kurtzman Carson Consultants LLC.

*Claims Register* means the official register of Claims maintained by the Claims and Balloting Agent.

*Class* means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

*Class 6 Disputed Claims Reserve* means a reserve for a portion of the Unsecured Creditor Recovery Pool to be held by the Disbursing Agent for the benefit of the holders of Disputed Claims in Class 6 pending allowance, in an amount equal to their Pro Rata (as determined in accordance with Article VI.F.3 of the Plan) share of the Unsecured Creditor Recovery Pool.

*CM/ECF* means the Bankruptcy Court's Case Management and Electronic Case Filing system.

*Confirmation* means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A of the Plan having been (a) satisfied or (b) waived pursuant to Article IX.C of the Plan.

**Confirmation Date** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket maintained for the Chapter 11 Cases.

**Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

**Consummation** means the occurrence of the Effective Date.

**Creditor** has the meaning prescribed in Bankruptcy Code section 101(10).

**Creditor Support Agreement** means the creditor support agreement dated November 8, 2016, and filed with the Bankruptcy Court under docket number 33.

**Cure Claim** means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to Bankruptcy Code section 365.

**Current Directors and Officers** means the directors and officers of the Debtors who were directors and officers of the Debtors as of the Petition Date.

**Debtor** means one of the Debtors.

**Debtors** means, collectively, Erickson Incorporated; EAC Acquisition Corporation; Erickson Helicopters, Inc.; Erickson Transport, Inc.; Evergreen Helicopters International, Inc.; Evergreen Equity, Inc.; and Evergreen Unmanned Systems, Inc.

**DIP Closing Date** means December 8, 2016, and effective as of November 8, 2016.

**DIP Credit Agreements** means, collectively, the DIP Term Facility Credit Agreement and the DIP Revolving Facility Credit Agreement.

**DIP Equity Distribution** means the number of shares of New Common Stock to be distributed to holders of Allowed DIP Term Facility Claims at a 20% discount to Plan Equity Value as is necessary to pay the remaining balance of the Allowed DIP Term Facility Claims in full after the distribution of all or a portion of the New Second Lien Credit Facility to such holders.

**DIP Facilities** means, collectively, the DIP Revolving Facility and the DIP Term Facility.

4

*DIP Financing Order* means the Final Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing On A Superpriority Secured and Priming Basis, (B) Grant Liens And Superpriority Administrative Expense Status, (C) Use Cash Collateral of the Existing First Lien Parties and Existing Second Lien Parties, (D) Grant Adequate Protection To The Existing First Lien Parties And Existing Second Lien Parties, And (E) Enter Into DIP Revolving Credit Facility And DIP Term Facility; (II) Modifying The Automatic Stay; And (III) Granting Related Relief, dated December 2, 2016 [Docket No. 133] entered in the Chapter 11 Cases.

*DIP Parties* means, collectively, the DIP Term Facility Parties and the DIP Revolving Facility Parties.

*DIP Revolving Facility* means the first lien super-priority revolving credit facility, provided by the DIP Revolving Facility Lenders in connection with the DIP Revolving Facility Credit Agreement and approved by the Bankruptcy Court on a final basis pursuant to the DIP Financing Order.

*DIP Revolving Facility Agent* means Wells Fargo Bank, National Association, in its capacities as administrative agent and collateral agent under the DIP Revolving Facility Credit Agreement.

*DIP Revolving Facility Claim* means a Claim held by any of the DIP Revolving Facility Parties arising under or relating to the DIP Revolving Facility Credit Agreement or the DIP Financing Order, including any and all fees, interest paid in kind, and accrued but unpaid interest and fees arising under the DIP Revolving Facility Credit Agreement, and all Obligations as defined thereunder.

*DIP Revolving Facility Credit Agreement* means the First Lien Super-Priority Debtor-In-Possession Facility Credit Agreement, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, dated as of the DIP Closing Date, by and among Erickson and Erickson Helicopters, Inc., as co-borrowers, the other Debtors as guarantors, the DIP Revolving Facility Agent, and the DIP Revolving Facility Lenders.

*DIP Revolving Facility Lenders* means, collectively, Wells Fargo Bank, National Association; Deutsche Bank Trust Company Americas; Bank of the West; and HSBC Bank USA, National Association.

*DIP Revolving Facility Parties* means, collectively, the DIP Revolving Facility Agent, the DIP Revolving Facility Lenders, the Issuing Bank (as defined under the DIP Revolving Facility Credit Agreement) and the Bank Product Providers (as defined under the DIP Revolving Facility Credit Agreement).

***DIP Term Facility*** means the second lien super-priority term loan facility in an aggregate principal amount of $66.67 million, plus accrued but unpaid interest, provided by the DIP Term Facility Lenders in connection with the DIP Term Facility Credit Agreement and approved by the Bankruptcy Court on a final basis pursuant to the DIP Financing Order.

***DIP Term Facility Agent*** means Wilmington Savings Fund Society, FSB, in its capacities as administrative agent and collateral agent under the DIP Term Facility Credit Agreement.

***DIP Term Facility Claim*** means a Claim held by any of the DIP Term Facility Parties arising under or relating to the DIP Term Facility Credit Agreement or the DIP Financing Order, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Term Facility Credit Agreement.

***DIP Term Facility Credit Agreement*** means the Second Lien Super-Priority Debtor-in-Possession Credit Agreement, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, dated as of the DIP Closing Date, by and among Erickson, as borrower, the other Debtors as guarantors, the DIP Term Facility Agent, and the DIP Term Facility Lenders.

***DIP Term Facility Lenders*** means the lenders party to the DIP Term Facility Agreement.

***DIP Term Facility Parties*** means, collectively, the DIP Term Facility Lenders and the DIP Term Facility Agent.

***DIP Term Facility Priority Account*** means the separate segregated account of Erickson in which all proceeds of the DIP Term Facility, other than the First Lien Repayment, are deposited.

***Disbursing Agent*** means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) regarding the Plan, as may be amended, modified, or supplemented in a manner acceptable to (i) the Required Investor Parties and (ii) the DIP Revolving Facility Agent and Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement.

***Disputed Claim*** means a Claim in a particular Class as to which a Proof of Claim has been Filed or is deemed to have been Filed under applicable law or an Administrative Claim as to which an objection has been or is Filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order. For the purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that

(a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the Debtors in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

**Distribution Record Date** means the Confirmation Date; provided, however, that the Distribution Record Date shall not apply to publicly held securities.

**Effective Date** means the date that is the first Business Day after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

**Eligible Offeree** means any holder or transferee of an Allowed Existing Second Lien Claim that is either (a) a QIB, or (b) an institutional "accredited investor" within the meaning of Rule 501(a)(1), (2), (3) or (7) under the Securities Act or an entity in which all of the equity investors are institutional accredited investors (which, in the case of (a) and (b), may not include any natural person).

**Employment Obligations** means any existing obligations to employees to be assumed, reinstated, or honored, as applicable, in accordance with Article IV.N of the Plan.

**Entity** means any Person, estate, trust, Governmental Unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

**Erickson Incorporated Interests** means any Interest in Erickson Incorporated that existed immediately before the Effective Date.

**Erickson** means Debtor Erickson Incorporated.

**Estate Property** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or their Estates on the Petition Date as defined by Bankruptcy Code § 541.

**Estates** means the bankruptcy estates of the Debtors and all Estate Property comprising the Debtors' bankruptcy estates within the meaning of Bankruptcy Code § 541.

**Exculpated Parties** means, collectively, the Debtors, the Backstop Parties, the DIP Parties, and the Existing First Lien Parties, and with respect to each of the foregoing Entities, any of their respective current officers, directors, professionals, advisors, accountants, attorneys,

investment bankers, consultants, employees, agents and other representatives (but solely in their capacity as such).

**Executory Contract** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

**Existing First Lien Agent** means Wells Fargo Bank, National Association, in its capacity as administrative agent under the Existing First Lien Credit Agreement.

**Existing First Lien Credit Agreement** means the Credit Agreement dated as of May 2, 2013 (as the same has been amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof), among Erickson and Erickson Helicopters, Inc., an Oregon corporation f/k/a Evergreen Helicopters, Inc., as co-borrowers, and each of their respective direct and indirect subsidiaries, as guarantors, the Existing First Lien Lenders, and the Existing First Lien Agent.

**Existing First Lien Credit Documents** means, collectively, the Existing First Lien Credit Agreement and all loan and security documents, guaranties, mortgages, pledges, instruments, and other agreements related thereto and/or executed in connection therewith.

**Existing First Lien Credit Facility** means the credit made available for borrowing under the Existing First Lien Credit Documents.

**Existing First Lien Credit Facility Claims** means the Claims held by any of the Existing First Lien Lenders arising under or relating to the Existing First Lien Credit Documents or the DIP Financing Order, including any and all fees, interest paid in kind, and accrued but unpaid interest and fees arising under the Existing First Lien Credit Documents, and all Obligations as defined thereunder, minus any portion of the Existing First Lien Credit Facility Claims that have been Paid in Full or rolled up into, deemed issued under, or otherwise replaced or refinanced by the DIP Revolving Facility.

**Existing First Lien Lenders** means, collectively, the banks and other financial institutions that are lenders under the Existing First Lien Credit Agreement.

**Existing First Lien Parties** means, collectively, the Existing First Lien Agent and the Existing First Lien Lenders.

**Existing Intercreditor Agreement** means the Intercreditor Agreement dated as of May 2, 2013, among the Existing First Lien Agent and the Indenture Trustee (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

***Existing Second Lien Claim*** means any Claim arising under or related to the Existing Second Lien Notes.  Such Claims shall include (i) the outstanding principal amount as of the Petition Date; plus (ii) accrued but unpaid interest at the non-default rate.

***Existing Second Lien Deficiency Claim*** means the Allowed amount of the Existing Second Lien Claim less the Allowed amount of the Existing Second Lien Secured Claim; provided, that if Class 5 votes to reject the Plan, the entire amount of the Allowed Existing Second Lien Claims shall be deemed to be Existing Second Lien Deficiency Claims.

***Existing Second Lien Indenture*** means the Indenture dated as of May 2, 2013, as amended, restated, supplemented, or otherwise modified from time to time, among Erickson, as issuer, the guarantors party therein, and the Indenture Trustee.

***Existing Second Lien Notes*** means the 8.25% Second Priority Senior Secured Notes Due 2020 issued under the Existing Second Lien Indenture.

***Existing Second Lien Secured Claim*** means any Existing Second Lien Claim that is a Secured Claim.

***Exit Financing*** means, collectively, the New First Lien Credit Facility, the New Second Lien Credit Facility and the Rights Offering.

***FAA*** means the Federal Aviation Administration.

***File***, ***Filed***, or ***Filing*** means, as to any document or pleading, properly and timely file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

***Final Order*** means an order or judgment (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired; or (b) in the event an appeal, writ of certiorari, or motion for reargument or rehearing has been Filed, such judgment or order has not been reversed, modified, stayed, or amended.

***First Lien Repayment*** means the Debtors' repayment of outstanding loans under the Existing First Lien Credit Facility in the principal amount equal to $14,890,364 in accordance with the Interim DIP Financing Order.

***Former Directors and Officers*** means the former directors and officers of the Debtors who were no longer directors and officers of the Debtors as of the Petition Date.

***GAAP*** means generally accepted accounting principles as in effect from time to time in the United States.

*General Unsecured Claim* means an Unsecured Claim that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Unsecured Tax Claim; (d) an Other Priority Unsecured Claim; or (e) an Intercompany Claim.  For the avoidance of doubt, General Unsecured Claims include Existing Second Lien Deficiency Claims.

*Governmental Unit* means any governmental unit, as defined in Bankruptcy Code section 101(27).

*Impaired* or *Impairment* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

*Indenture Trustee* means Wilmington Trust, National Association, in its capacities as trustee and notes collateral agent under the Existing Second Lien Indenture.

*Indenture Trustee Fees* means, the Claims for reasonable compensation, fees, expenses, disbursements, indemnification, subrogation and contribution of the Indenture Trustee, including, without limitation, internal default fees, attorneys', financial advisors' and agents' fees, expenses and disbursements, incurred by or owed to the Indenture Trustee, whether prepetition or postpetition, or whether before or after consummation of the Plan, which shall be paid in accordance with the Plan.

*Insider* has the meaning set forth in Bankruptcy Code section 101(31).

*Intercompany Claim* means any Claim held by a Debtor or an Affiliate against a Debtor.

*Intercompany Interest* means an Interest in a Debtor other than Erickson Incorporated held by another Debtor or by a non-debtor Affiliate of a Debtor.

*Interest* means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor, that existed immediately before the Effective Date.

*Interim DIP Financing Order* means the Interim Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing On A Super-Priority Secured and Priming Basis, (B) Grant Liens And Superpriority Administrative Expense Status, (C) Use Cash Collateral of the Existing First Lien Parties and Existing Second Lien Parties, (D) Grant Adequate Protection To The Existing First Lien Parties And Existing Second Lien Parties, And (E) Enter Into DIP Revolving Credit Facility And DIP Term Facility; (II) Modifying The Automatic Stay; (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) And 4001(c); And (IV) Granting Related Relief, dated November 10, 2016 [Docket No. 40].

***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

***Lien*** means a lien, security interest, or other interest or encumbrance as defined in Bankruptcy Code section 101(37) asserted against any Estate Property.

***Litigation Trust*** means the grantor trust that shall be established by the Debtors pursuant to the terms of the Plan and the Litigation Trust Agreement for the benefit of the Litigation Trust Beneficiaries.

***Litigation Trust Agreement*** means the agreement setting forth the terms and conditions of the Litigation Trust, which shall be in the form contained in the Plan Supplement and shall be in form and substance acceptable to the Debtors and the Required Investor Parties.

***Litigation Trust Assets*** means (a) the Litigation Trust Causes of Action, (b) the Litigation Trust Funding Amount, and (c) Preference Causes of Action.

***Litigation Trust Beneficiaries*** means holders of Litigation Trust Interests.

***Litigation Trust Causes of Action*** means those Causes of Action set forth on the Schedule of Litigation Trust Causes of Action to be included in the Plan Supplement, but shall not include (a) Causes of Action against Released Parties and (b) Causes of Action against Current Directors and Officers.

***Litigation Trust Interests*** means the beneficial interests in the Litigation Trust issued to holders of Allowed General Unsecured Claims pursuant to Article III.D.6 of the Plan.

***Litigation Trust Funding Amount*** means $300,000.00 to be distributed by the Debtors to the Litigation Trust on the Effective Date to fund the operation of the Litigation Trust in accordance with the Litigation Trust Agreement.

***Litigation Trustee*** means the Person appointed to act as trustee of the Litigation Trust in accordance with the terms of this Plan, the Confirmation Order, and the Litigation Trust Agreement, or any successor appointed in accordance with the terms of the Litigation Trust Agreement.

***Management Incentive Plan*** means the management incentive plan that shall grant to officers and directors of Reorganized Erickson and its subsidiaries options to acquire New Common Stock as further described in Article IV.M of the Plan.

***Master Ballot*** means the Ballot to be completed by a Nominee by compiling the votes and other information from the Beneficial Holder Ballots.

***New Board*** means the board of directors of the Reorganized Debtors selected in accordance with Article IV.I of the Plan. The identities and affiliations of the members of the New Board shall be identified in the Plan Supplement on or before the date of the Confirmation Hearing, to the extent known at such time.

***New Common Stock*** means common stock of Reorganized Erickson.

***New First Lien Credit Facility*** means a senior secured revolving asset-based lending and term credit facility in a maximum amount of $150 million, which shall be in form and substance acceptable to the Required Investor Parties.

***New First Lien Credit Facility Documents*** means all agreements, documents, and instruments delivered or entered into in connection with the New First Lien Credit Facility, which documents shall be in form and substance acceptable to the Required Investor Parties.

***New Organizational Documents*** means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents, as applicable, which shall be included in the Plan Supplement and shall be in form and substance acceptable to the Required Investor Parties.

***New Second Lien Agent*** means the administrative agent and collateral agent under the New Second Lien Credit Facility as appointed by the Required Investor Parties.

***New Second Lien Credit Facility*** means the junior secured credit facility on the terms set forth in Annex A to the Plan.

***New Second Lien Credit Facility Documents*** means all agreements, documents, and instruments delivered or entered into in connection with the New Second Lien Credit Facility, which documents shall be in form and substance acceptable to the Required Investor Parties and the New Second Lien Agent.

***Nominee*** means an Entity through which a beneficial holder who holds Existing Second Lien Secured Claims in "streetname" may vote on the Plan.

***Ordinary Course Professional*** means a Professional employed and retained pursuant to the Ordinary Course Professionals Order.

***Ordinary Course Professionals Order*** means the Order Under 11 U.S.C. §§ 105(a), 327, 330, and 331 Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business [Docket No. 190] entered in the Chapter 11 Cases.

***Other Priority Unsecured Claim*** means any Claim entitled to priority status pursuant to section 507(a) of the Bankruptcy Code that is not (a) an Administrative Claim, (b) a Professional Compensation Claim, or (c) a Priority Unsecured Tax Claim.

***Other Secured Claim*** means any Secured Claim that is not a DIP Revolving Facility Claim, DIP Term Facility Claim, Secured Tax Claim, Existing First Lien Credit Facility Claim, or an Existing Second Lien Claim. Other Secured Claims shall not include any such Claims secured by Liens that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Paid in Full*** or ***Payment in Full*** means, with respect to the Existing First Lien Credit Facility Claims and the DIP Revolving Facility claims, "payment in full" of such Claim within the meaning of such phrase as used in Section 1.4 of the DIP Revolving Facility Credit Agreement.

***Payoff Letter*** means the payoff letter(s) to be entered into by the Debtors, the DIP Revolving Facility and the Existing First Lien Agent, pursuant to which, among other things, (a) the DIP Revolving Facility Claims are to be Paid in Full and (b) the Existing First Lien Credit Facility Claim (excluding the Refinancing Accommodation Fee to the extent not payable pursuant to the terms of the Creditor Support Agreement) are to be Paid in Full.

***Person*** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

***Petition Date*** means November 8, 2016, the date on which the Debtors commenced the Chapter 11 Cases.

***Plan*** means the Chapter 11 plan Filed by the Debtors, as such document may be amended or modified.

***Plan Distribution*** means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

***Plan Documents*** means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be Filed by the Debtors with the Bankruptcy Court.

***Plan Supplement*** means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, (a) in form and substance satisfactory to (i) the Debtors, (ii) the Required Investor Parties, and (iii) the DIP Revolving Facility Agent and the Required Lenders, to the extent required under the DIP Revolving Facility Credit Agreement, and (b) as may be altered, amended, modified, or supplemented from time to

time in accordance with the terms of the Plan and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than five days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including the following, as applicable (1) New Organizational Documents; (2) either (a) the New First Lien Credit Facility Documents or (b) a commitment letter and term sheet for the New First Lien Credit Facility; (3) New Second Lien Credit Facility Documents, (4) the Schedule of Assumed Contracts and Leases; (5) the Schedule of Rejected Contracts and Leases; (6) the Schedule of Assumed Aircraft Leases; (7) the Schedule of Rejected Aircraft Leases; (8) the Schedule of Retained Causes of Action; (9) the Schedule of Litigation Trust Causes of Action; (10) the Litigation Trust Agreement; (11) the Backstop Agreement; (12) the Pro Forma Equity Dilution Table; and (13) the Payoff Letter.

*Plan Equity Value* means the enterprise value of the Reorganized Debtors on a consolidated basis as of the Effective Date, increased by the proceeds of the Rights Offering and decreased by the amount of indebtedness and capitalized leases after consummation of the Restructuring Transactions.

*Preference Causes of Action* means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to section 547 of the Bankruptcy Code.

*Priority Unsecured Tax Claim* means an Unsecured Claim, or the portion thereof, that is entitled to priority in payment under Bankruptcy Code section 507(a)(8).

*Professional* means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

*Professional Compensation Claim* means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b) or 1103.

*Professional Compensation Claim Bar Date* means forty-five (45) days after the Effective Date.

*Professional Compensation Claim Objection Deadline* means twenty-four (24) days after the Professional Compensation Claim Bar Date.

*Professional Compensation Claim Reserve* means an amount of Cash to be estimated by the Debtors prior to the Effective Date and sufficient to satisfy Professional Compensation

Claims, and together with any remaining Carve Out (as defined in DIP Financing Order) from the DIP Term Facility Priority Account, shall be deposited into a segregated interest bearing account in the name of the Reorganized Debtors and shall only be used for payment and satisfaction of such Claims.

**Pro Forma Equity Dilution Table** means the Pro Forma Equity Dilution Table included in the Plan Supplement showing the planned distribution of the New Common Stock.

**Proof of Claim** means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable Bar Date.

**Pro Rata** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

**Put Option Premium** means a nonrefundable aggregate premium payable to the Backstop Parties on the Effective Date in shares of Rights Offering Common Stock pursuant to the Rights Offering Procedures and the Approval Order.

**QIB** means "qualified institutional buyer," as such term is defined in Rule 144A under the Securities Act.

**Refinancing Accommodation Fee** means the Refinancing Accommodation Fee, as defined and set forth in the Amendment Fee Letter, dated as of July 22, 2016, among Erickson, Erickson Helicopters, Inc. and the Existing First Lien Agent.

**Reinstate**, **Reinstated**, or **Reinstatement** means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

**Released Party** means, collectively, and in each case solely in their capacities as such: (a) the Debtors; (b) the Backstop Parties; (c) the DIP Parties; (d) the Existing First Lien Parties; and (e) with respect to each of the foregoing Entities, such Entity's predecessors, professionals, successors, assigns, subsidiaries, Affiliates, managed accounts and funds, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees; provided, however, that (i) ZM Private Equity Fund I, L.P., (ii) ZM Private Equity Fund II, L.P., (iii) ZM EAC LLC, (iv) Centre Lane Partners, LLC, (v) 10th Lane Finance Co., LLC, (vi) Quinn Morgan, (vii) Kenneth Lau, (viii) Hank Halter, (ix) Udo Rieder, (x) James Welch and (xi) all Former Directors and Officers of the Debtors shall not be Released Parties.

**Releasing Party** means (i) the holders of all Claims or Interests who vote to accept the Plan; (ii) the holders of Claims or Interests that are Unimpaired under the Plan; (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein.

**Reorganized Debtors** means, collectively, a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

**Reorganized Erickson** means Erickson Incorporated, or Erickson Incorporated's successor or assign by merger, consolidation, or otherwise, on and after the Effective Date.

**Required Investor Parties** means holders of at least 66.7% of the DIP Term Facility Claims and the commitments under the Backstop Agreement.

**Required Lenders** means "Required Lenders," as defined in the DIP Revolving Facility Credit Agreement.

**Restructuring Transactions** means the transactions described in Article IV.C of the Plan.

**Retained Causes of Action** means all Causes of Action that belong to the Debtors, but shall not include Litigation Trust Causes of Action and Causes of Action against Released Parties.

**Rights** means the rights to purchase Rights Offering Common Stock and the Rights Offering New Second Lien Loans in accordance with the Rights Offering Procedures.

**Rights Expiration Time** means the Voting Deadline.

**Rights Offering** means the rights offering pursuant to which each Eligible Offeree is entitled to receive Rights to acquire the Rights Offering Common Stock and the Rights Offering New Second Lien Loans in accordance with the Rights Offering Procedures.

**Rights Offering Common Stock** means shares of New Common Stock issued in the Rights Offering in accordance with the Plan and the Rights Offering Procedures.

**Rights Offering New Second Lien Loans** means the New Second Lien Loans issued in connection with the Rights Offering.

**Rights Offering Procedures** means the procedures governing the Rights Offering attached as an exhibit to the Backstop Agreement, and which shall be in form and substance acceptable to the Required Investor Parties.

***Rights Offering Record Date*** means the date established in the Rights Offering Procedures as the record date for determining the holders of Allowed Existing Second Lien Claims entitled to receive the Rights.

***Schedules*** means, collectively, the Schedules of Assets and Liabilities, Schedule of Assumed Aircraft Leases, Schedule of Assumed Contracts and Leases, Schedule of Rejected Aircraft Leases, Schedule of Rejected Contracts and Leases, Schedule of Retained Causes of Action, and Schedule of Litigation Trust Causes of Action.

***Schedules of Assets and Liabilities*** means the schedules of assets and liabilities Filed by the Debtors in the Chapter 11 Cases, as may be amended, modified, or supplemented.

***Schedule of Assumed Aircraft Leases*** means the schedule of unexpired aircraft leases to be assumed to be Filed as part of the Plan Supplement.

***Schedule of Assumed Contracts and Leases*** means the schedule of Executory Contracts and Unexpired Leases to be assumed, and, if applicable, assigned, by the Debtors, to be Filed as part of the Plan Supplement.

***Schedule of Equity Security Holders*** means the schedule of Interests required to be Filed pursuant to Bankruptcy Rule 1007(a)(3).

***Schedule of Litigation Trust Causes of Action*** means the Litigation Trust Causes of Action set forth on the schedule to be Filed as part of the Plan Supplement.

***Schedule of Rejected Aircraft Leases*** means the schedule of unexpired aircraft leases to be rejected by the Debtors, to be Filed as part of the Plan Supplement.

***Schedule of Rejected Contracts and Leases*** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors, to be Filed as part of the Plan Supplement.

***Schedule of Retained Causes of Action*** means the Retained Causes of Action set forth on the schedule to be Filed as part of the Plan Supplement.

***Second Lien Equity Distribution*** means 100% of the New Common Stock issued on the Effective Date, subject to dilution for the DIP Equity Distribution, the Rights Offering Common Stock and the Management Incentive Plan.

***Secured Claim*** means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

***Secured Tax Claim*** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts, (a) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes or (b) entitled to obtain an encumbrance on property to secure payment of any tax claim specified in Bankruptcy Code section 507(a)(8). Secured Tax Claims shall not include any such Claims secured by liens/security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Securities Act*** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

***Solicitation*** means solicitation in accordance with the Approval Order of (a) votes under the Plan and (b) the Rights.

***Solicitation Materials*** means the Disclosure Statement (including all exhibits and appendices), Ballot, and any other materials to be used in the Solicitation of votes on the Plan.

***Stipulation*** means the stipulation approved pursuant to the Order Granting Debtors' Motion for Approval of Stipulation by the Debtors and the United States of America for Adequate Protection [Docket No. 320] entered in these Chapter 11 Cases.

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law. Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***United States*** means the United States of America and all agencies thereof.

***Unsecured Claim*** means a Claim that is not a Secured Claim. The term specifically includes any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, pursuant to Bankruptcy Code section 506(a), any Claim of a Creditor against the Debtors to the extent that such Creditor's Claim is greater than the value of the Lien securing such Claim (including, without limitation, any Existing Second Lien Deficiency Claim), any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, and any Claim not otherwise classified under the Plan.

**Voting Deadline** means March 13, 2017 at 4:00 p.m., prevailing Central Time, which is the deadline established by the Bankruptcy Court pursuant to the Approval Order for submitting a Ballot to accept or reject the Plan.

**Voting Record Date** means February 15, 2017.

## <u>Annex A</u>

**New Second Lien Credit Facility Term Sheet**

## New Second Lien Credit Facility Term Sheet

*This term sheet (this "Term Sheet") provides an outline of a proposed second lien term loan financing. This Term Sheet does not include descriptions of all of the terms, conditions and other provisions that are to be contained in the documentation relating to such transactions. Any capitalized terms not defined herein shall have the meanings set forth in the Glossary of Defined Terms attached to the Joint Plan of Reorganization of Erickson Incorporated, et al, Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan").*

| | |
|---|---|
| Borrower | Reorganized Erickson Incorporated |
| Guarantors | Each of the Borrower's direct and indirect domestic subsidiaries or otherwise reasonably acceptable to the Backstop Parties. All obligations of the Borrower under the New Second Lien Credit Facility will be unconditionally guaranteed on a joint and several basis by the Guarantors. For the avoidance of doubt, any guarantor of the New First Lien Credit Facility shall be Guarantor under the New Second Lien Credit Facility. |
| Facility | On the Closing Date (as defined below), (i) in accordance with the Plan, each holder of an Allowed DIP Term Facility Claim shall receive its Pro Rata share of new non-amortizing term loans deemed outstanding under the New Second Lien Credit Facility ("Rollover Loans"), which Rollover Loans shall be in an aggregate principal amount equal to $40.0-70.0 million, and (ii) to the extent applicable under the terms of the Rights Offering, each Eligible Offeree (a "Rights Offering Lender") that participates in the Rights Offering shall fund the principal amount of new non-amortizing term loans under the New Second Lien Credit Facility (the "New Money Loans", and collectively with the Rollover Loans, the "Second Lien Loans") that it subscribed for pursuant to the Rights Offering Procedures, which New Money Loans shall be in an aggregate principal amount not to exceed $10 million. |
| Lenders | The lenders (the "Lenders") under the New Second Lien Credit Facility, (i) with respect to the Rollover Loans, each holder of an Allowed DIP Term Facility Claim and (ii) with respect to the New Money Loans, if any, each Rights Offering Lender. |
| Agent: | A financial institution selected by the Backstop Parties shall act as administrative agent and collateral agent (in such capacities, the "Second Lien Agent"). |
| Security: | A perfected security interest in and lien on all or substantially all of the assets of the Borrower and the Guarantors (the "Collateral"), which security interests and liens shall be senior |

112474389 v6

|  | to any and all other security interests and liens on the Collateral other than the security interests and liens securing the New First Lien Credit Facility and certain other permitted liens to be agreed.  For the avoidance of doubt, the Collateral under the New Second Lien Credit Facility shall be the same as the collateral under the New First Lien Credit Facility or otherwise reasonably acceptable to the Backstop Parties, but the liens securing the New Second Lien Credit Facility on such Collateral shall be junior to the liens on such collateral securing the New First Lien Credit Facility.<br><br>The relative rights and priorities in the Collateral for each of the New First Lien Credit Facility and New Second Lien Credit Facility will be set forth in a customary intercreditor agreement (the "Exit Intercreditor Agreement") as between the collateral agent for the New First Lien Credit Facility, on the one hand, and the Second Lien Agent, on the other hand. |
|---|---|
| Interest: | The Second Lien Loans will bear interest, at the Borrower's option, (i) at a rate per annum equal to 15.0% payable in cash (a "Cash Election") or (ii) at a rate per annum equal to 17.5% payable by adding such interest to the principal amount of the outstanding Second Lien Loans (a "PIK Election" and, together with a Cash Election, an "Election"), in each case, monthly in arrears.<br><br>The Borrower shall make an Election with respect to each interest period by providing at least 5 business days' notice to the Second Lien Agent prior to the beginning of such interest period.  If an Election is not made by the Borrower in a timely fashion or at all with respect to the method of payment of interest for an interest period, the Borrower shall be deemed to have made the PIK Election.  Any Cash Election or PIK Election provided above shall apply to all outstanding Second Lien Loans ratably.  The Second Lien Agent shall provide written notice of the Borrower's Election to all Lenders under the New Second Lien Credit Facility. |
| Default Rate: | Upon and during the continuance of any event of default, interest on the Second Lien Loans and all other outstanding amounts under the New Second Lien Credit Facility shall accrue at a rate per annum equal to 2.0% plus the otherwise applicable rate. |

| | |
|---|---|
| Maturity: | All obligations under the New Second Lien Credit Facility will be due and payable in full in cash on the earlier of (i) the 5th anniversary of the Closing Date (the "Scheduled Maturity Date") and (ii) the date of the acceleration of the Second Lien Loans and the termination of any commitments under the New Second Lien Credit Facility in accordance with the Definitive Loan Documentation (as defined below) therefor. |
| Mandatory Prepayments: | Subject to the Exit Intercreditor Agreement, mandatory prepayments of the Second Lien Loans shall be required with 100% of net cash proceeds from (i) the sale or other disposition of assets, subject to exceptions to be agreed, (ii) casualty events, subject to exceptions to be agreed, (iii) any sale or issuance of debt (other than permitted debt to be agreed), and (iv) any other mandatory prepayments required under the New First Lien Credit Facility. |
| Voluntary Prepayments: | Voluntary repayments or prepayments in whole or in part prior to the Scheduled Maturity Date shall only be permitted at a make-whole premium equal to the present value on the payment date of the repayment price on the Scheduled Maturity Date plus all required interest payments (other than accrued but unpaid interest to the repayment or prepayment date) due on the Second Lien Loans through such Scheduled Maturity Date (to be determined based on a discount rate equal to the yield on U.S. Treasury notes with a maturity closest to the Scheduled Maturity Date plus 50 basis points). |
| Conditions to the Closing Date: | Conditions precedent to the closing date of the New Second Lien Credit Facility (the "Closing Date") customarily found in loan documents for similar exit financings and other conditions precedent deemed by the Backstop Parties appropriate to the specific transaction, including, without limitation: (i) execution and delivery of definitive documentation evidencing the New Second Lien Credit Facility, in each case, which shall be in form and substance substantially consistent with this Term Sheet and otherwise acceptable to the Borrower, Guarantors, the Second Lien Agent and Backstop Parties (the "Definitive Loan Documentation"); and (ii) entry of a final, non-appealable order confirming the Plan (a "Confirmation Order"). |
| Representations and Warranties: | Representations and warranties customarily found in similar exit financings and other representations and warrants deemed by the Backstop Parties appropriate to the specific transaction. |

4

| Affirmative, Negative and Financial Covenants: | Affirmative, negative and financial covenants customarily found in similar exit financings and other affirmative, negative and financial covenants deemed by the Backstop Parties appropriate to the specific transaction. |
|---|---|
| Events of Default: | Events of default customarily found in similar exit financings and other events of default deemed by the Backstop Parties appropriate to the specific transaction.<br>Upon the acceleration of Second Lien Loans (including upon the commencement of a voluntary or involuntary bankruptcy filing), (x) the principal amount of Second Lien Loans, plus accrued but unpaid interest at the default rate shall be immediately payable in cash and (y) the Lenders shall be entitled to receive any make-whole or repayment or prepayment premium that would have become due if the Second Lien Loans had been optionally repaid or prepaid at such time. |
| Remedies: | The Second Lien Agent (acting at the direction of the Required Lenders (as defined below)) and the Lenders shall have customary remedies, including, without limitation, the right to realize on all Collateral. |
| Assignments and Participations: | Assignments under the New Second Lien Credit Facility are subject to the consent of the Second Lien Agent, which consent shall not be unreasonably withheld or delayed, except, in each case, with respect to any assignment to a Lender, an affiliate of such a Lender or a fund engaged in investing in commercial loans that is advised or managed by such a Lender.  No participation shall include voting rights, other than for matters requiring consent of 100% of the Lenders. |
| Indemnification and Expenses: | The Borrower and the Guarantors, jointly and severally, will indemnify and hold harmless the Second Lien Agent, the Backstop Parties, the Lenders, their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") from and against all costs, expenses (including reasonable and documented fees, disbursements and other charges of outside counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Borrower or any of its affiliates) that relates to the New Second Lien Credit Facility, the Confirmation Order, or the transactions contemplated hereby or thereby; provided that, no Indemnified Person will be indemnified for any cost, expense |

| | |
|---|---|
| | or liability to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted solely from its gross negligence or willful misconduct.<br><br>No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Borrower, the Guarantors or any of their subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence and willful misconduct. In no event, however, shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential or punitive damages.<br><br>In addition, (a) all out-of-pocket expenses (including, without limitation, reasonable and documented fees, disbursements and other charges of outside counsel and financial advisors) of the Second Lien Agent and the Backstop Parties, whether accrued on, prior to or after the Closing Date, in connection with the New Second Lien Credit Facility and the transactions contemplated hereby or thereby shall be paid by the Borrower and the Guarantors from time to time, whether or not the Closing Date occurs and (b) all out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of outside counsel and financial advisors) of the Second Lien Agent and the Lenders, for enforcement costs and documentary taxes associated with the New Second Lien Credit Facility and the transactions contemplated thereby will be paid by the Borrower and the Guarantors. |
| Governing Law: | State of New York |
| Miscellaneous: | The Definitive Loan Documentation will include standard yield protection provisions (including, without limitation, provisions relating to compliance with risk based capital guidelines, increased costs and payments free and clear of withholding taxes). |