

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 22, 2017**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **ERICKSON INCORPORATED**, *et al.*, | § | **Case No. 16-34393-hdh** |
| | § | |
| Debtors. | § | (Jointly Administered) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF ERICKSON INCORPORATED, *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

On March 21, 2017, the Court conducted a hearing (the "**Confirmation Hearing**") to

consider confirmation of the *Second Amended Joint Plan of Reorganization of Erickson*

*Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 3, 2017

[Docket No. 381] (the "**Plan**"), filed by Erickson Incorporated and its debtor affiliates, as debtors

and debtors in possession (collectively, the "**Debtors**").[1]  As referred to herein, the "Plan" shall be the Plan attached to the *Order Confirming the Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Confirmation Order**") as **Exhibit A**.  After considering the evidence presented and the arguments of counsel for the Debtors and other parties in interest, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

### A. Introduction

1.  On December 23, 2016, the Debtors filed the *Joint Plan of Reorganization of Erickson Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 211]. Also on December 23, 2016, the Debtors filed the *Disclosure Statement in Support of the Joint Plan of Reorganization of Erickson Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 212] (as amended, the "**Disclosure Statement**").  Amended versions of the Plan and Disclosure Statement were filed on January 19, 2017 [Docket Nos. 332 and 333, respectively] and on February 3, 2017 [Docket Nos. 381 and 382, respectively].  These Findings of Fact and Conclusions of Law are made with respect to confirmation of the Plan.

### B. Jurisdiction and Venue

2.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core matter under 28 U.S.C. § 157(b).  Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

C. **Eligibility for Relief**

3. The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

D. **The Chapter 11 Cases**

4. On November 8, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing the above-captioned chapter 11 cases jointly administered under Bankruptcy Case No. 16-34393 (the "**Chapter 11 Cases**").

5. The Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

E. **The Solicitation Materials and Related Matters**

6. On January 19, 2017, the Debtors filed the *Motion of the Debtors for Entry of an Order (i) Approving the Disclosure Statement; (ii) Fixing a Record Date; (iii) Approving Cure Procedures; (iv) Approving Solicitation Procedures; (v) Approving Form of Ballot and Establishing Voting Procedures; and (vi) Establishing Notice And Objection Procedures with Respect to Confirmation of the Chapter 11 Plan of the Debtors* [Docket No. 335] (the "**Disclosure Statement Motion**"). The Debtors also filed the *Motion of the Debtors for Entry of an Order (i) Authorizing Entry into the Backstop Agreement, (ii) Approving the Rights Offering Procedures, and (iii) Granting Related Relief* [Docket No. 337] (the "**Rights Offering Motion**").

7.     On February 6, 2017, the Court entered an order approving the Disclosure Statement [Docket No. 388] (the "**Disclosure Statement Approval Order**").  Pursuant to the Disclosure Statement Approval Order, the Court (a) established certain solicitation and voting procedures (the "**Solicitation Procedures**"); (b) established notice and objection procedures with respect to the hearing to consider confirmation of the Plan; (c) established certain procedures regarding the assumption and rejection of executory contracts and unexpired leases; (d) established March 13, 2017 at 4:00 p.m. prevailing Central Time as the Voting Deadline and the Confirmation Objection Deadline; and (e) scheduled the Confirmation Hearing to commence on March 21, 2017 at 9:00 a.m. prevailing Central Time.

8.     Also on February 6, 2017, the Court entered an order granting the Rights Offering Motion [Docket No. 387] (the "**Rights Offering Order**").  In the Rights Offering Order, the Court approved the proposed procedures (the "**Rights Offering Procedures**") for the offering of rights to participate in an up to $30 million rights offering (the "**Rights Offering**"). Pursuant to the Rights Offering Procedures, the Rights Expiration Time was established as 4:00 p.m. prevailing Central Time on March 13, 2017.  The Court also authorized the Debtors to enter into and perform under that certain Backstop Agreement among the Debtors and the Investors dated as of February 9, 2017 (as amended from time to time, the "**Backstop Agreement**").

9.     On February 10, 2017, in accordance with the Disclosure Statement Approval Order and the Rights Offering Procedures, the Debtors commenced solicitation of votes on the Plan and launched the Rights Offering.  In connection with soliciting votes to accept or reject the Plan, the Debtors transmitted or caused the following materials (collectively, the "**Solicitation Materials**") to be transmitted in accordance with the Disclosure Statement Approval Order: (i) the Confirmation Hearing Notice (which contained a link to the Plan, Disclosure Statement,

Disclosure Statement Approval Order, including any amendment, attachment, exhibit, or supplement related thereto, the time of the Confirmation Hearing and the deadline for filing objections to the Plan); (ii) Ballots, as applicable; (iii) Non-Voting Status Notice or Unimpaired Status Notice (as each is defined in the Disclosure Statement Approval Order), and (iv) a solicitation letter from the Debtors in support of the Plan (the "**Solicitation Letter**").

10.      On February 10, 17, and 23, and March 8, 2017,[2] the Debtors, through their solicitation agent, Kurtzman Carson Consultants LLC ("**KCC**"), caused the Solicitation Materials to be transmitted and served in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**"), and the Disclosure Statement Approval Order.  In particular, the applicable Solicitation Materials were transmitted to and served on holders of Other Priority Unsecured Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3), Existing First Lien Credit Facility Claims (Class 4), Existing Second Lien Secured Claims (Class 5), General Unsecured Claims (Class 6), Intercompany Claims (Class 7), Erickson Incorporated Interests (Class 8), and Intercompany Interests (Class 9) in compliance with the Solicitation Procedures.  Ballots were included in the Solicitation Materials transmitted to holders of Other Priority Unsecured Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3), Existing First Lien

---

[2] The Debtors were required to transmit the Solicitation Materials to holders of Claims and Interests on or before February 10, 2017. Disclosure Statement Approval Order, ¶ 16. The Court further established the Voting Record Date (as defined in the Disclosure Statement Approval Order) for February 15, 2017. Disclosure Statement Approval Order, ¶ 5. The Debtors caused KCC to solicit acceptances or rejections of the Plan on February 10, 2017 pursuant to the Disclosure Statement Approval Order. The Debtors, further, caused KCC to supplement the February 10, 2017 solicitation of acceptances or rejections of the Plan on February 17, 2017, to solicit acceptances or rejections of the Plan from holders of new claims filed after February 10, 2017 but on or before February 15, 2017. To the extent that KCC received postal forwarding addresses from its earlier solicitations on February 10, 2017 and February 15, 2017, KCC further solicited acceptances or rejections of the Plan to holders of Claims or Interests at the new forwarding addresses on February 23, 2017, and March 8, 2017.

Credit Facility Claims (Class 4), Existing Second Lien Secured Claims (Class 5), and General Unsecured Claims (Class 6) eligible to vote pursuant to the Solicitation Procedures to the extent there were holders of Claims in each such Class.

11.     Pursuant to the Disclosure Statement Approval Order, the Debtors were not required to solicit votes on the Plan from holders of Intercompany Claims (Class 7), Erickson Incorporated Interests (Class 8), and Intercompany Interests (Class 9), as such Classes were deemed to accept or reject the Plan under sections 1126(f) and (g) of the Bankruptcy Code.  The Debtors served holders of Claims and Interests in Classes 7, 8, and 9 with a copy of (i) the Confirmation Hearing Notice, and (ii) (a) the Non-Voting Status Notice or (b) the Unimpaired Status Notice, pursuant to the Disclosure Statement Approval Order.

12.     The Debtors formulated the Plan in good faith and solicited acceptances thereon pursuant to, and in accordance with, the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.  The Plan has been solicited in good faith, and the Debtors are entitled to the full protections afforded under 11 U.S.C. § 1125(e).

13.     On March 8, 2017, the Debtors filed a supplement to the Plan [Docket No. 493] (as amended, supplemented, restated or modified from time to time, the "**Plan Supplement**").  The materials contained in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Approval Order, and no other or further notice is or shall be required. The documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  In accordance with the Plan, the Plan Supplement may be altered, amended, updated, or modified

prior to the Effective Date, subject to the terms of the Plan and in the case of the Payoff Letter, with the written consent of the DIP Revolving Facility Agent and the Existing First Lien Agent.

14. KCC filed certificates of service (the "**Solicitation Certificates of Service**") [Docket Nos. 450, 461, and 497] evidencing service of the Solicitation Materials on Creditors, Interest holders, and the other parties entitled to service under the Disclosure Statement Approval Order. KCC also served the Plan Supplement by electronic mail and first class U.S. mail to the creditors and parties in interest on the Debtors' limited service list (the "**Plan Supplement Certificate of Service**" (Docket No. 517 and together with the Solicitation Certificates of Service, the "**Certificates of Service**"). In addition, on March 9, 2017, KCC served the Schedule of Assumed Contracts and Leases, the Schedule of Rejected Contracts and Leases, the Schedule of Assumed Aircraft Leases, and the Schedule of Rejected Aircraft Leases by first class U.S. mail on the non-Debtor counterparties to the Debtors' Executory Contracts and Unexpired Leases. *Id.* The Debtors are conclusively determined to have provided all holders of Claims and Interests and parties-in-interest, whose names and addresses were known to the Debtors, with adequate and sufficient notice of the foregoing. The notice provided by the Debtors is adequate under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and the Disclosure Statement Approval Order; and such notice did apprise the parties receiving same of the Plan and information and deadlines in the Disclosure Statement Approval Order.

F. **Objections to Claims for Voting Purposes**

15. On March 3, 2017, the Debtors filed the following objections to claims for voting purposes only: Claim 8 filed by Ford Motor Credit Co., LLC [Docket No. 477]; Claim 199 filed by Travis Huelsebusch [Docket No. 478]; and Claim 239 filed by Bell Helicopter Textron, Inc. [Docket No. 479] (collectively, the "**Claim Objections**"). No responses or

motions for temporary allowance were filed by any of the claimants against whom the Claim Objections were filed. Pursuant to the Disclosure Statement Approval Order, the Claims subject to the Claim Objections were not entitled to vote.

**G.** **Impairment of Claims and Results of Voting on the Plan**

16. Holders of Claims in Class 9 (Intercompany Interests) are unimpaired under the Plan. Under section 1126(f) of the Bankruptcy Code, holders of Claims in this Class are conclusively presumed to have accepted the Plan.

The Plan impairs Claims in Class 1 (Other Priority Unsecured Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), Class 4 (Existing First Lien Credit Facility Claims), Class 5 (Existing Second Lien Secured Claims), and Class 6 (General Unsecured Claims).

17. Claims in Class 7 (Intercompany Claims) shall be, at the option of the Debtors, with the consent of the Required Investor Parties, either Reinstated or cancelled and released without any distribution. Claims in Class 7 (Intercompany Claims) are therefore conclusively presumed to have either accepted or rejected the Plan. Accordingly, holders of Claims in Class 7 (Intercompany Claims) are not entitled to vote on the Plan.

18. Holders of Interests in Class 8 (Erickson Incorporated Interests) are receiving nothing on account of such Interests under the Plan. Under section 1126(g) of the Bankruptcy Code, holders of Interests in this Class are conclusively presumed to have rejected the Plan and are not entitled to vote on the Plan.

19. On March 17, 2017, the Debtors filed the *Certification of P. Joseph Morrow IV with Respect to the Tabulation of Votes on the Second Amended Joint Plan of Erickson Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 535] (the

"**Ballot Certification**"). The voting results contained in the Ballot Certification are incorporated herein by reference, and are adopted by the Court as its findings of fact.

- Class 1 (Other Priority Unsecured Claims). Only Debtor Erickson Incorporated had Class 1 Other Priority Unsecured Claims asserted against it. Therefore, except with respect to Erickson Incorporated, Class 1 for each of the other Debtors is eliminated pursuant to paragraph 33 of the Disclosure Statement Approval Order. With respect to the Other Priority Unsecured Claims in Class 1 for Erickson Incorporated, no ballots were cast. Accordingly, Class 1 for Erickson Incorporated is deemed to have voted to accept the Plan pursuant to paragraph 32 of the Disclosure Statement Approval Order.

- Class 2 (Other Secured Claims). Only Debtor Erickson Incorporated had Class 2 Other Secured Claims asserted against it. Therefore, except with respect to Erickson Incorporated, Class 2 for each of the other Debtors is eliminated pursuant to paragraph 33 of the Disclosure Statement Approval Order. With respect to the Other Secured Claims asserted in Class 2 for Erickson Incorporated, no valid ballots were submitted. Accordingly, Class 2 for Erickson Incorporated is deemed to have voted to accept the Plan pursuant to paragraph 32 of the Disclosure Statement Approval Order.

- Class 3 (Secured Tax Claims). There were no Class 3 Secured Tax Claims asserted against any of the Debtors. Accordingly, Class 3 of each of the Debtors is eliminated pursuant to paragraph 33 of the Disclosure Statement Approval Order.

- Class 4 (Existing First Lien Credit Facility Claims). 100% in number and 100% in amount of voting creditors in Class 4 (Existing First Lien Credit Facility Claims) voted to accept the Plan as to each of the Debtors. Accordingly, Class 4 for each of the Debtors has voted to accept the Plan.

- Class 5 Claimants and Class 6 Claimants voted overwhelmingly in favor of the Plan as to each of the Debtors.

- Class 5 (Existing Second Lien Secured Claims). 94.92% in number (i.e., 113 Creditors) and 98.78% (i.e., representing $12,437,116.44 in Claims) in amount of voting creditors in Class 5 (Existing Second Lien Secured Claims) voted to accept the Plan as to each of the Debtors (out of a total pool of $12,589,066.55 in Class 5 Claims that voted). Accordingly, Class 5 for each of the Debtors has voted overwhelmingly to accept the Plan.

- Class 6 (General Unsecured Claims).

  o In Erickson Incorporated, 90.06% in number (i.e., 227 Creditors) and 98.53% (i.e., representing $298,669,452.65) in amount of voting creditors in Class 6 (General Unsecured Claims) voted to accept the Plan (out of a total pool of $303,121,109.38 in Claims that voted).

  o In Erickson Helicopters, Inc., 93.20% in number (i.e., 138 Creditors) and 98.55% (representing $294,288,974.23 in Claims) in amount of voting creditors in Class 6 (General Unsecured Claims) voted to accept the Plan (out of a total pool of $298,583,302.42 in Claims that voted).

  o In Erickson Helicopters International, Inc., 94.96% in number (i.e., 114 Creditors) and 98.78% (representing $293,143,400.04 in Claims) in amount of voting creditors in Class 6 (General Unsecured Claims) voted to accept the Plan (out of a total pool of $296,724,607.85 in Claims that voted).

  o In each of Erickson Transport, Inc., Erickson Unmanned Systems, Inc., Evergreen Equity, Inc., and Evergreen Unmanned Systems, Inc., 94.92% in number (i.e., 113 Creditors) and 98.78% (representing $293,143,140.04 in Claims) in amount of voting creditors in Class 6 (General Unsecured Claims) voted to accept the Plan (out of a total pool of $296,724,607.85 in Claims that voted).

20. The classification and treatment of Claims and Interests are described in Articles II and III of the Plan, and the Plan implementation procedures are described in Article IV of the Plan. The foregoing complies with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

**H.** **Informal Comments, Objections to Confirmation of the Plan and Disposition Thereof**

21. Pursuant to the Disclosure Statement Approval Order, the Court established the Confirmation Objection Deadline as March 13, 2017 at 4:00 pm Central (the "**Confirmation**

**Objection Deadline**"). Prior to the Confirmation Objection Deadline, four objections to the Plan were filed: (i) the *Objection of Wilmington Trust, National Association, as Indenture Trustee, to Confirmation of the Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al.* [Docket No. 447] (the "**Original Wilmington Objection**"); (ii) the *United States of America's Objection to Debtors' Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 498] (the "**IRS Objection**"); (iii) the *Objection of the Chubb Companies to the Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al. Pursuant to Chapter 11 of the Bankruptcy Code and the Related Cure Notice* [Docket No. 503] (the "**Chubb Objection**"); and (iv) the *Supplemental Objection of Wilmington Trust, National Association, as Indenture Trustee, to Confirmation of the Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al.*[Docket No. 504] (the "**Supplemental Wilmington Objection**," collectively, with the Original Wilmington Objection, the "**Wilmington Objection**", and collectively with the IRS Objection and the Chubb Objection, the **"Confirmation Objections"**).

22.     Additionally, the Debtors received informal comments to the Plan and/or Plan Supplement from the following parties: (i) the Securities and Exchange Commission; (ii) the Department of Justice representing the  Environmental Protection Agency; (iii) the Department of Justice representing the Department of Navy, Department of Transportation, United States Postal Service, United States Coast Guard and Customs and Border Protection; (iv) the United States Trustee; (v) the Backstop Parties (vi)  DIP Revolving Facility Agent; and (vii) the Existing First Lien Agent (collectively, the "**Informal Comments**").

23.     The Debtors negotiated resolutions of the Informal Comments with each of the relevant parties and the parties who had filed the Confirmation Objections, which resolutions

were implemented through agreed language in the Confirmation Order or the Plan Supplement. Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein and/or in modified or amended versions of the Plan and Plan Supplement filed with the Court prior to entry of the Confirmation Order (collectively, the "**Plan Modifications**").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) require additional disclosure under section 1125 of the Bankruptcy Code; (iii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iv) materially and adversely change the treatment of any Claims or Interests, (v) require re-solicitation of any holders of Claims or Interests, or (vi) require that any such holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim or Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

## I.        The Confirmation Hearing

24.        On February 10, 2017, the Debtors caused to be mailed the Confirmation Hearing Notice to (a) all known holders of Claims, (b) all known holders of Interests, and (c) all other parties in interest, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Approval Order.  The Debtors published a notice substantially similar to the Confirmation Hearing Notice in the national edition of *USA TODAY* on February 23, 2017. The Debtors have given proper, adequate, and sufficient notice of the Plan, the Confirmation Hearing, and the deadlines for filing objections to and voting on the Plan as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Approval Order to all known holders of Claims or Interests and all Notice Parties.  No other or further notice was or shall be required.

25.        The Court conducted the Confirmation Hearing on March 21, 2017 at 9:00 a.m. (Central Time).

## J.        Release and Exculpation

26.        The Plan contemplates various releases and exculpations for the Released Parties.  The releases and exculpations are integral components of the Plan and the compromises and settlements contained therein.  For the Plan to be confirmable and acceptable to the major constituencies, the Debtors, the Backstop Parties, the DIP Parties, and the Existing First Lien Parties negotiated various releases and exculpations to resolve fully and finally all issues among the parties.  The releases and exculpation are incorporated in Article VIII of the Plan.

27.        The Debtors' management, as well as the Debtors' attorneys, advisors and other professionals have played an integral role in, and have provided a tangible benefit to, the Debtors' restructuring efforts.  These parties have worked diligently (both before and after the

Petition Date) in connection with the Debtors' restructuring efforts. The Debtors' management, with the assistance of the Debtors' attorneys, advisors and other professionals: (a) assisted in efforts to prepare for the Debtors' Chapter 11 Cases; (b) assisted in the negotiation and formulation of the Disclosure Statement and Plan and the negotiation and consummation of the Rights Offering and the Backstop Agreement; and (c) responded to myriad issues that arose during the restructuring process and the Chapter 11 Cases.

28. The Backstop Parties, the DIP Parties, and the Existing First Lien Parties played an active role in the Debtors' restructuring efforts, and contributed meaningful and critical funding of the Chapter 11 Cases, including concessions impacting the required funding of the Chapter 11 Cases through the DIP Facilities and the financing of the Debtors' emergence in the Plan. Without these financial contributions, there would be no Plan and it is unlikely that any creditor holding a Second Lien Claim or General Unsecured Claim would receive any meaningful distribution.

29. The Chapter 11 Cases have been difficult and have progressed through the bankruptcy process at an extremely rapid pace. The Professionals have played an integral role in, and have provided a tangible benefit to, the Debtors' bankruptcy efforts, including in the formulation and negotiation of the Plan. The exculpation of the Professionals under Article VIII.E of the Plan describes the appropriate standard of liability for such parties in the context of a chapter 11 bankruptcy.

30. Each of the parties receiving a release or exculpation under the Plan has participated in the Chapter 11 Cases and the Debtors' restructurings in good faith, and has acted in compliance with all provisions of the Bankruptcy Code, including the negotiation, preparation, and pursuit of confirmation of the Plan, and the negotiation and formulation of the Rights

Offering Procedures, the Backstop Agreement, the DIP Term Facility, the DIP Revolving Facility, and the Exit Financing.

31.     The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpation set forth in Article VIII of the Plan. As has been established based on the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) are the product of extensive good faith, arm's length negotiations, (ii) are an integral component of the terms of the Plan, and (iii) are supported by the Debtors and their key stakeholders, including the Backstop Parties, the DIP Parties, and the Existing First Lien Parties. Based on the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, these provisions were a heavily negotiated aspect of the Plan and failure to give effect to them would impair the Debtors' ability to confirm the Plan.

32.     The release provision in Article VIII.C of the Plan (Releases by the Debtors) is appropriate, as it represents a valid exercise of the Debtors' business judgment. The release provisions in Articles VIII.A and VIII.D of the Plan (Release of Debtors and Releases by Holders of Claims and Interests) (the "**Third Party Releases**") are appropriate, as the releases contained therein are consensual and supported by the rationale outlined above. The Third Party Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the various claims, Causes of Action and contested issues raised by the Chapter 11 Cases; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve disputed issues among or against certain parties in

interest in these Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code. The Third Party Releases are an integral part of the Plan, as they facilitated participation in both the Debtors' Plan and the chapter 11 process generally. The Third Party Releases were a core negotiation point in developing a Plan that maximized value for all of the Debtors' creditors and kept the Debtors intact as a going concern. As such, the Third Party Releases appropriately offer certain protections to parties who constructively participated in the Debtors' restructuring process by supporting the Plan through providing important financing and other commitments. The releases are consensual because they were conspicuously disclosed in boldface type in the Plan, the Disclosure Statement, and on the Ballots, which provided parties in interest with sufficient notice of the releases, and holders of Claims or Interests entitled to vote on the Plan were given the option to opt-out of the Releases. The exculpation provided in Article VIII.E of the Plan is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's length negotiations among the Debtors, the Backstop Parties, the DIP Parties, and the Existing First Lien Parties, was an integral component of the Plan, and is appropriately limited in scope—covering only certain enumerated activities performed in furtherance of the Debtors' restructuring and excepting bad faith, actual fraud, willful misconduct, and gross negligence.

33.     The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provided for in the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the

injunctions, exculpation, and releases set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law and are therefore approved.

**K.**   **Means for Implementation of the Plan**

34.     The restructuring transactions contemplated under Article IV of the Plan are necessary and appropriate to effectuate the restructuring provided for in the Plan, including issuance of New Common Stock, entry and performance under the New First Lien Credit Facility, entry and performance under the New Second Lien Credit Facility, and the Rights Offering.

35.     The Rights Offering was conducted in accordance with the Rights Offering Procedures and the Rights Offering Order.  The Debtors have given proper, adequate, and sufficient notice of the deadline for exercising subscription rights under the Rights Offering. The Debtors solicited subscriptions to the Rights Offering in good faith and in compliance with the Rights Offering Procedures, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy laws, rules or regulations.

36.     The New First Lien Credit Facility and New Second Lien Credit Facility were offered and negotiated in good faith. The Debtors exercised reasonable business judgment in negotiating and accepting the terms of the proposed New First Lien Credit Facility and New Second Lien Credit Facility.

37.     The New First Lien Credit Facility is necessary and appropriate to provide sufficient funds to the Reorganized Debtors to make the Plan feasible.

38.     The New Second Lien Credit Facility is necessary and appropriate to provide sufficient funds to the Reorganized Debtors to make the Plan feasible.

39.     The Litigation Trust Agreement for the Litigation Trust filed with the Plan

Supplement complies with the terms of the Plan and is reasonable.

**L.     <u>Executory Contracts and Unexpired Leases</u>**

40.     Article V of the Plan provides that all Executory Contracts and Unexpired

Leases of the Debtors that were not previously assumed or rejected by prior order of the Court

are deemed assumed, other than those Executory Contracts or Unexpired Leases that : (a)

previously were assumed or rejected by the Debtors; (b) are specifically designated on the

Schedule of Rejected Contracts and Leases Filed and served prior to commencement of the

Confirmation Hearing; (c) are specifically designated on the Schedule of Rejected Aircraft

Leases Filed and served prior to commencement of the Confirmation Hearing; (d) are subject to

a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation

Date; (e) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to

which the requested effective date of such rejection is after the Effective Date; or (f) are the

subject of Article IV.N of the Plan.

41.     In accordance with the Disclosure Statement Approval Order, on February 15,

2017, the Debtors filed the Notice of Cure Procedures [Docket No. 411] (the "**First Cure

Notice**"), identifying the Contracts and Leases that may be assumed under the Plan and the cure

amounts, if any, necessary to assume the Executory Contracts and Unexpired Leases.   On

February 16, 2017, the Debtors filed a *Notice of Filing of Supplemental Exhibit to Notice of Cure

Procedures* [Docket No. 421] (the "**First Supplemental Cure Notice**").   On March 8, 2017, the

Debtors filed a *Notice of Filing of Second Supplemental Exhibit to Notice of Cure Procedures*

[Docket No. 492] (the "**Second Supplemental Cure Notice**," and together with the First Cure

Notice and the Second Supplemental Cure Notice, the "**Cure Notices**").   The Cure Notices were

properly served on the relevant contract counterparties, as established by the *Certificate of Service of Alvaro Salas, Jr., re: Documents Served on February 15, 2017* [Docket No. 432], the *Certificate of Service of Alvaro Salas, Jr., re: Documents Served on February 16, 2017* [Docket No. 433], and *Certificate of Service of Alvaro Salas, Jr., re: Documents Served on March 8, 2017* [Docket No. 507].  On March 8, 2017, the Debtors filed with the Court the Schedule of Assumed Contracts and Leases, the Schedule of Rejected Contracts and Leases, the Schedule of Assumed Aircraft Leases, and the Schedule of Rejected Aircraft Leases, identifying executory contracts and unexpired leases that the Debtors intend to assume or reject, as applicable, pursuant to Article V of the Plan.

42.     Pursuant to the Disclosure Statement Approval Order, the Court established the deadline to object to the Debtors' assumption of any Executory Contract or Unexpired Lease as March 13, 2017 (the "**Cure Objection Bar Date**").  Prior to the Cure Objection Bar Date, seven objections were filed: (i) the *Cure Objection* filed by Thomas J. Manley [Docket No. 459] [Docket No. 459] (the "**Manley Objection**"); (ii) the *Bell Helicopter Textron Inc.'s and Textron Innovations, Inc.'s Objection to Notice of Cure Procedures* [Docket No. 495] (the "**Bell Cure Objection**"); (iii) the *Cure Objection to Evoqua Water Technologies LLC to Proposed Cure Amount* [Docket No. 499] (the "**Evoqua Cure Objection**"); (iv) the *Objection to Assumption of Contract and Proposed Cure Amount [Relates to Docket Nos. 411 and 492]* [Docket No. 500] (the "**Helivia Cure Objection**"); (v) the *Starlite Aviation Operations LTD.'s Objection to Notice of Cure Procedures* [Docket No. 501] (the "**Starlite Cure Objection**"); (vi) Objection of the Chubb Companies to the Second Amended Joint Plan of Reorganization of Erickson Incorporated, et al. Pursuant to Chapter 11 of the Bankruptcy Code and the Related Cure Notice [Docket No. 503] (the "**Chubb Cure Objection**"); and (vii) Cartridge Actuated Devices, Inc.'s

Objection to Proposed Cure Amount [Docket No. 508] (the "**Cartridge Cure Objection**," and collectively with the Manley Objection, the Bell Cure Objection, the Evoqua Cure Objection, the Helivia Cure Objection, the Starlite Cure Objection, and the Chubb Cure Objection, the "**Cure Objections**").

43.     As described in the Confirmation Order, the Debtors have either (i) agreed with the cure amounts asserted in the respective Cure Objections, (ii) removed the underlying Executory Contracts or Unexpired Leases addressed in the Cure Objection from the Schedule of Assumed Contracts to the Schedule of Rejected Contracts, or (iii) otherwise resolved or addressed the respective Cure Objections.

44.     The Debtors have filed separate motions to assume all of the aircraft leases listed on the Schedule of Assumed Aircraft Leases with the exception of four aircraft leases with HeliFleet 2013-01, LLC ("**HeliFleet**") for aircraft tail numbers N300EV, N366EV, N367EV, and N8227J (collectively, the "**HeliFleet Assumed Aircraft Leases**"). As described in the Confirmation Order, the Debtors have agreed upon procedures with HeliFleet for the assumption, or subsequent rejection, of the HeliFleet Assumed Aircraft Leases.

45.     The Debtors reserved the right to delay rejection of certain Executory Contracts and Unexpired Leases to 30 days after the Effective Date, or at a later day as may be agreed between the parties as described in the Schedule of Rejected Contracts and Leases.

46.     The Debtors have exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Article V of the Plan. Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor counterparties and their successors and assigns to such

executory contract or unexpired lease, all to the same extent as if such assumption was effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Order. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed or assumed and assigned by the Debtors pursuant to the Plan. In addition, the Debtors or Reorganized Debtors or their successors and assigns, as applicable, are financially sound, and have provided adequate assurance of future performance under such executory contracts and unexpired leases being assumed or assumed and assigned, as applicable.

47.     Raymond Miller, James Continenza, and Jeffrey Roberts  have been selected to serve as the Directors of the Reorganized Debtors. Two additional non-insider directors will be appointed to the New Board prior to or on the Effective Date in accordance with the terms of the Plan.

48.     Jeffrey Roberts, David Lancelot, and Andrew Mills have been selected to serve as the officers of the Reorganized Debtors.

49.     The Court's oral Findings of Fact on the record at the Confirmation Hearing are incorporated herein by reference.

50.     To the extent that any provision designated herein as a Finding of Fact is more properly characterized as a Conclusion of Law, it is adopted as such.

51.     To the extent any objection to Confirmation of the Plan has not been withdrawn, it is overruled or is otherwise addressed in the Confirmation Order.

## CONCLUSIONS OF LAW

A.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). This matter arises under title 11, and jurisdiction is vested in this Court to enter a final order by virtue of 28 U.S.C. § 1334(a) and (b), 28 U.S.C. §§ 151, 157(a) and (b)(1), and the Standing Order of Reference in this District. These Findings of Fact and Conclusions of Law are being entered pursuant to Bankruptcy Rules 7052 and 9014.

**Confirmation Requirements Concerning the Plan**

**11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11**

B.  The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code. The Plan complies with the applicable provisions of the Bankruptcy Code, including section 1123 of the Bankruptcy Code. The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied. The Debtors have complied with the terms of the Disclosure Statement Approval Order, the Bankruptcy Rules, the Local Rules, and the applicable provisions of the Bankruptcy Code. The requirements of section 1129(a)(2) of the Bankruptcy Code are therefore satisfied.

C.  Specifically, the Plan, as required by section 1123 of the Bankruptcy Code:

- designates, subject to section 1122, Classes of Claims, other than Claims of a kind specified in sections 507(a)(1), 507(a)(2) or 507(a)(8), and Classes of Interests;

- specifies every Class of Claims or Interests that is not impaired under the Plan;

- specifies the treatment of any Class of Claims or Interests that is impaired under the Plan;

- provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such particular Claim or Interest;

- provides adequate means for the Plan's implementation; and

- contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

D.      The Plan complies with the applicable provisions of title 11, and the Debtors have complied with the applicable provisions of chapter 11, as required by sections 1129(a)(1) and (a)(2) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(3):  Plan Proposed in Good Faith

E.      The Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan with the legitimate and honest purpose of reorganizing their financial affairs and making distributions to Creditors.  The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. The Plan is the result of good faith, arm's-length negotiations among the Debtors, the Backstop Parties, the DIP Parties, the Existing First Lien Parties and other creditor constituencies.  The Plan has been proposed in good faith.

### 11 U.S.C. § 1129(a)(4):  Disclosure and Approval of Payments

F.      Any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(5):  Disclosure of Management and Payments to Insiders

G.      As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identities of the individuals proposed to serve on the boards of directors or

managers, as applicable, and officers of the Reorganized Debtors after the Effective Date of the Plan and information about the directors' and officers' affiliations and constitutes adequate disclosure of such information.

H.    The Debtors have disclosed the identity of any director, officer, or employee of the Reorganized Debtors that is an Insider.  The Debtors have disclosed the nature of any compensation to be paid to any such director, officer, or employee.  Consequently, the Debtors have provided sufficient disclosure regarding the identity of any insiders that will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insiders. Each director and officer will serve in accordance with the terms and subject to the conditions of the New Organizational Documents.

### 11 U.S.C. § 1129(a)(6):  Regulatory Rate Approval

I.    The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

### 11 U.S.C. § 1129(a)(7):  Best Interest of Creditors Test

J.    The Debtors prepared a liquidation analysis (the "**Liquidation Analysis**") with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis was attached as Exhibit 5 to the Disclosure Statement.  The Court accepts the results of the Liquidation Analysis.  Based on the Liquidation Analysis, with respect to each impaired Class of Claims or Interests, (a) each holder of a Claim or Interest of such Class has either accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of 11 U.S.C § 1129(a)(7) are therefore satisfied.

**11 U.S.C. § 1129(a)(8):  Acceptance of Plan by All Classes**

K.      Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan.  Except for the Intercompany Interests in Class 9 and, at the election of the Debtors with the consent of the Required Investor Parties, the Intercompany Claims in Class 7, all Claims and Interests are impaired under the Plan.  As depicted in the Ballot Certification, all Classes of Claims and Interests who were entitled to vote on the Plan either voted to accept the Plan or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied. Alternatively, to the extent the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied, the Plan meets the cramdown requirements of section 1129(b) of the Bankruptcy Code with respect to Class 8 which is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The cramdown requirements of section 1129(b) are satisfied because the Plan does not provide a Distribution to Class 8 Erickson Incorporated Interests, and there are no Classes junior to such Classes that are receiving a Distribution or retaining any property under the Plan.

**11 U.S.C. § 1129(a)(9):  Payment of Priority Claims**

L.      Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(l)-(8) of the Bankruptcy Code.   Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim.  Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the Plan or, if not, cash equal to

the allowed amount of such claim. Under Section II.A of the Plan, holders of Allowed

Administrative Claims (Claims entitled to priority under section 507(a)(2)) shall be paid an

amount of Cash equal to the amount of their Allowed Administrative Claims, except as

otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or

Reorganized Debtors, as applicable, with the consent of the Required Investor Parties; *provided*,

that holders of Allowed DIP Term Facility Claims shall receive the treatment set forth in Section

II.C of the Plan. Under Section III.D of the Plan, holders of Other Priority Unsecured Claims

(Claims entitled to priority in payment under sections 507(a)(1) and (4)-(7)) will be paid in full

in Cash or such other treatment as is consistent with the requirements of section 1129(a)(9) of the

Bankruptcy Code, except to the extent that a holder of an Allowed Other Priority Unsecured

Claim agrees to a less favorable treatment. No holder of an Administrative Claim and no

member of the Class of Other Priority Unsecured Claims objected to this treatment proposed by

the Plan. Accordingly, the Plan meets the requirements of sections 1129(a)(9)(A) and

1129(a)(9)(B) of the Bankruptcy Code.

M. Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under

section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of

a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b)

over a period ending not later than 5 years after the date of the order for relief under sections

301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority

unsecured claim provided for by the Plan. Section II.E of the Plan provides that Allowed

Priority Unsecured Tax Claims shall be treated in accordance with section 1129(a)(9)(C) of the

Bankruptcy Code, except to the extent that a holder of an Allowed Priority Unsecured Tax Claim

agrees to less favorable treatment. Accordingly, the Plan meets the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

N. In addition, Section IV.D.2 of the Plan provides for the satisfaction of Allowed Secured Tax Claims by (a) payment in full in Cash of the Allowed Secured Tax Claim; (b) transferring the collateral securing the Allowed Secured Tax Claim, or (c) such other treatment consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan therefore meets the requirements of section 1129(a)(9)(D) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan**

O. Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under a plan, at least one class must have accepted the plan, without including any votes of insiders. Class 4 is comprised of Allowed Existing First Lien Credit Facility Claims and is impaired under the Plan. Without including any acceptance of the Plan by any insider, Class 4 voted to accept the Plan as to each of the Debtors. In addition, Classes 1 (Other Priority Unsecured Claims), 2 (Other Secured Claims), 5 (Existing Second Lien Secured Claims) (as to each of the Debtors), and 6 (General Unsecured Claims) are impaired under the Plan and voted to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(11):  Feasibility**

P. At the Confirmation Hearing, the Debtors offered the recovery analysis attached as Exhibit 8 to the Disclosure Statement, the financial projections attached as Exhibit 6 to the Disclosure Statement, the *Declaration of David Lancelot in Support of Confirmation of the Plan*, dated March 20, 2017 [Docket No. 569] (the "**Lancelot Declaration**"), *Declaration of David Tokoph in Support of Confirmation of the Plan* [Docket No. 571] (the "**MBA Declaration**"), and

the *Declaration of Christopher Shepard in Support of Confirmation of the Plan*, dated March 20, 2017 Docket No. [570] (the "**Imperial Declaration**") to demonstrate the feasibility of the Plan. Based on the testimony and the supporting documentary evidence presented at the Confirmation Hearing, the Court finds that the Plan implements the reorganization of the Debtors and their businesses and the restructuring of their financial obligations. The financial projections prepared by the Debtors are reasonable, and the Debtors can be expected to achieve operational results consistent with those financial projections. The financial projections demonstrate that the Debtors will be able to make all payments required under the Plan, and that confirmation of the Plan is not likely to be followed by liquidation or further need for financial restructuring by the Debtors. Therefore, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(12): Payment of Fees

Q. Article XII.C of the Plan provides that, until the Chapter 11 Cases are closed, all fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by each Reorganized Debtor or by the Disbursing Agent on behalf of the Reorganized Debtors. Accordingly, the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(13): Retiree Benefits

R. Article IV.N. of the Plan provides that all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law. Accordingly, the Plan complies with the requirements of section 1129(a)(13) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(14):  Domestic Support Obligations**

S.      The Debtors are not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(a)(15):  Objection to Plan Confirmation by a Holder of an Unsecured Claim**

T.      The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(a)(16):  Restrictions on Transfers of Property by Nonprofit Entities**

U.      Each of the Debtors and the Litigation Trust are a moneyed, business, or commercial corporation or trust, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(d)**

V.      The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

**11 U.S.C. § 1129(b)**

W.      Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan . . . if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan."  For purposes of section 1129(b) of the Bankruptcy Code, the Plan is fair and equitable to the extent that the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

X.      All Classes that were entitled to vote on the Plan either voted in favor of the Plan or are conclusively presumed to have accepted the Plan. If it is determined, however, that Class 8 Erickson Incorporated Interests did not accept the Plan or are conclusively presumed to have rejected the Plan, the Plan is fair and equitable with respect to the holders of Class 8 Erickson Incorporated Interests because the Plan does not provide a Distribution to parties in that Class, and there are no Classes junior to such Class that are receiving a Distribution or retaining any property under the Plan.  Therefore, the Plan meets the cramdown requirements under section 1129(b) of the Bankruptcy Code regarding the treatment of the Class 8 Erickson Incorporated Interests.

**Miscellaneous Provisions**

Y.      The Court's oral Conclusions of Law on the record at the Confirmation Hearing are incorporated herein by reference.

Z.      The record of the Confirmation Hearing is closed.

AA.      To the extent that any provision designated herein as a Conclusion of Law is more properly characterized as a Finding of Fact, it is adopted as such.

# # #   END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW   # # #

**Submitted by:**

**HAYNES AND BOONE, LLP**

Kenric D. Kattner
State Bar No. 11108400
Kourtney Lyda
State Bar No. 24013330
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.547.2000
Facsimile: 713.547.2600
Email: kenric.kattner@haynesboone.com
Email: kourtney.lyda@haynesboone.com

and

Ian T. Peck
State Bar No. 24013306
David Staab
State Bar No. 24093194
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940
Email: ian.peck@haynesboone.com
Email: david.staab@haynesboone.com

**ATTORNEYS FOR THE DEBTORS**